377 So.2d 103 (1979)
STATE of Louisiana
v.
Freddie STEGALL, Jr.
No. 64861.
Supreme Court of Louisiana.
November 12, 1979.
G. Frederick Seemann, Dean, Lomenick & Seemann, A Professional Law Corp., Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, First Asst. Dist. Atty., for plaintiff-appellee.
*104 CALOGERO, Justice.[*]
Defendant Freddie Stegall, Jr. was indicted for the first degree murder of his father, Freddie Stegall, Sr. He initially pled not guilty and not guilty by reason of insanity, but later withdrew that plea and was allowed to plead guilty to the reduced charge of manslaughter. After a pre-sentencing investigation and a lengthy pre-sentencing hearing, the trial court sentenced defendant to twenty years at hard labor with the recommendation that he be placed in a satellite of Angola and that there be further "psychiatric examination" of defendant. The only issue raised on this appeal is whether defendant's twenty year sentence is excessive under Article I, § 20 of the Louisiana Constitution of 1974.[1]
Because defendant was allowed to plead guilty to manslaughter rather than being tried for murder, the facts of this case can only be gleaned from the testimony presented at the pre-sentencing hearing and from the pre-sentencing report. Defendant, who was sixteen and a half years old at the time of the incident and eighteen at the time of sentencing, testified that on the evening of July 2, 1977 he was home alone, having been punished by his father. When a friend of his stopped by, defendant decided to go out and left a note for his father saying that although he knew he would be angry he had gone out. Defendant returned home about 10:00 P.M. When his father returned around midnight, he was angry that his son had disobeyed him and began striking him. His father then left the house and got into his truck. Defendant grabbed a shotgun, followed his father outside, aimed and shot. Although defendant testified that he did not remember what happened after the shooting, the pre-sentence investigation report indicated that defendant drove his father's truck with the body in it off the highway onto Grandnigo Island Road in an attempt to hide it. Defendant then cleaned the shotgun and disposed of the empty shotgun shells. Other testimony at the pre-sentencing hearing indicated that defendant also took his father's wallet. Several weeks after the shooting defendant made a written statement in which he attempted to implicate his father's girlfriend's former boyfriend in the killing.
At the sentencing hearing the trial court acknowledged that while he had not heard all of the facts of the case because the defendant had been allowed to plead guilty to a lesser charge, he had heard enough to conclude that defendant could have been convicted of first degree murder. Stating his reasons for the record, he found that under Article 894.1 there were three factors which required that he impose a sentence of imprisonment: 1) that there was a danger of recurrence, 2) that there was a need for custodial environment for rehabilitation, and 3) that a lesser period of incarceration would deprecate the seriousness of the crime.
In his stated reasons the trial court observed (based on defendant's paternal grandfather's testimony that defendant had, approximately one week before the shooting, asked him what would happen if an older brother were to kill the father) that defendant "had explored the sanction against murder before the homicide and had killed his father after the alleged abuse had ceased .... [Defendant] attempted to conceal the crime itself, and the *105 weapons and instruments thereof; and he reported his father missing." Finding that defendant should be placed in custodial care, the trial court noted that his record "as a juvenile, and since the commission of the homicide, shows with great clarity that he thrives in custodial careboth as a minor and a majorwith respect to conformity. In other words, when he is locked up he behaves. When he is out, he is in constant trouble with the authorities." Following the mandate of Article 894.1 the trial court negated all of the mitigating factors which might have prompted him to suspend defendant's sentence or place him on probation:
"1. Certainly the defendant's act caused serious harm. It caused the death of his father.
2. The defendant knew his conduct would cause serious harm.
3. The defendant might have had some alleged provocation, and this has been considered in permitting him to plead guilty to manslaughter rather than First Degree Murder. In the opinion of this Court, the provocation came to rest; and, the best that can be said for the defendant, would be to say that his blood had not sufficiently cooled to convict him of murder.
Also, after listening to Judge Boagni, the Juvenile Judge,the Court is not sure there was provocation. There may have simply been overreaction to required discipline.
4. In the opinion of the court, there was no justification for homicide; and the homicide did not come by way of inadvertence, but was intended.
5. The victim certainly didn't induce or facilitate homicide. (See 3 above)
6. There is no way for the defendant to compensate the victim. The defendant took his father's irreplaceable life.
7. The defendant had a history of anti-social conduct, and not only a juvenile record, but a history of Juvenile Court appearances.
8. As stated above, this Court is of the opinion that there is a serious chance of recurrence.
9. The medical testimony before this Court indicates strong possibility of commission of another crime.
10. This is clearly not a case likely to respond to probationary treatment. The ever-present danger of another homicide is indicated by the instability and rebelliousness of the defendant. Further, this man only seems to behave while incarcerated.
11. The hardship of incarceration defendant will suffer is the ordinary hardship criminals must expect from commission of the crime of homicide.
This Court is aware of the age of the defendant, and paused at great length, and gave soul-searching thought to this factor."
The trial court's stated reasons in imposing sentence as required by La.C.Cr.P. art. 894.1 are an important aid to this Court when it is called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Gist, 369 So.2d 1339 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979). Because the trial judge in the instant case held a pre-sentencing hearing at which sentence-influencing factors were introduced and because he carefully and fully articulated the considerations taken into account and the factual basis for the imposition of the instant sentence, we are able to review defendant's contention that his sentence is excessive.
In sentencing the defendant to one year less than the maximum sentence for manslaughter the trial court found that all three of the aggravating factors of Article 894.1 were present. The trial court found that on the basis of defendant's previous juvenile record which indicated a progression from delinquency to the present homicide, defendant, if presented with the same or similar circumstances, would again commit "high crime." In finding that defendant was in need of correctional treatment, the trial court noted that when the defendant spent nine months at the Louisiana Juvenile Youth Authority institute he behaved well and responded to the correctional *106 environment. Finally, the court noted that the taking of a human life especially that of one's father is the most serious crime an individual can commit.
We find that the trial court's conclusions are supported by the record in this case. Defendant's juvenile record indicates that while he had never committed a violent crime, he had committed several juvenile offenses.
Judge Boagni testified that defendant had appeared in his court on "numerous" occasions for offenses including theft and criminal damage to property. Judge Boagni also indicated that defendant's mother was unable to control defendant and that he responded well to his institutionalization with the Louisiana Juvenile Youth Authority.
And while we must acknowledge that because defendant pled guilty to manslaughter all the facts of this case were not contested, the record lends support to the trial court's conclusion that defendant may have intentionally killed his father. The fact that defendant was only sixteen and a half years old at the time of the crime and eighteen at the time of sentencing was also considered in the judge's recommendation that defendant be placed in a satellite of Angola rather than Angola itself.
It is well-established that the trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of abuse of discretion. We can not find that the trial court in this case abused its discretion in sentencing this defendant to twenty years for the reduced charge of manslaughter.

Decree
Accordingly, the conviction and sentence of defendant are affirmed.
AFFIRMED.
NOTES
[*] Chief Judge Paul B. Landry, Retired, is sitting by Assignment as Associate Justice Ad Hoc in place of Tate, J., upon this case.
[1] Defendant assigns the following errors:

1) The lower court erred in imposing a sentence, the term of which is unconstitutionally excessive.
2) The lower court erred in its finding that it must impose imprisonment because of the great danger of recurrence of a similar crime on the part of the defendant.
3) The lower court erred in its finding that it must impose imprisonment because of the need for custodial environment for treatment.
4) The lower court erred in its finding that less than incarceration would depreciate [sic] the seriousness of the crime.
5) The lower court erred in failing to accord sufficient weight to mitigating factors concerned in the commission of the crime. The lower court, in obvious disregard to the great weight of the evidence and testimony presented, made its own finding and reached conclusions unsubstantiated by the evidence.