431 So.2d 763 (1983)
STATE of Louisiana
v.
Gary L. VAUGHN (Two cases).
Nos. 81-KA-3039, 82-K-0185.
Supreme Court of Louisiana.
April 18, 1983.
Rehearing Denied June 3, 1983.
*764 Larry W. Rivers, Alexandria, for defendant-relator.
Ronald C. Martin, Dist. Atty., for plaintiff-respondent.
ROBERT L. LOBRANO, Justice Ad Hoc.[*]
Defendant Gary L. Vaughn was charged in separate bills of information with violations of La.R.S. 14:67 (theft) and La.R.S. 14:134 (malfeasance in office). Vaughn was found guilty by a six-person jury of the theft charge and found guilty at the same trial by the judge alone of the malfeasance charge. He received a five-year suspended sentence on the theft charge with the condition that he serve one year in the parish jail. He was also given a $3,000.00 fine with the condition that he serve three years if he did not pay. Vaughn also received a six-month concurrent sentence on the malfeasance conviction. He now appeals his convictions and sentences to this Court, assigning nine errors in seven arguments.
FACTS
The following facts were adduced at trial:
On the evening of August 13, 1980 John A. Patrick, Jr. and his friend Terry Swayze *765 went out drinking at various bars in Natchitoches. Their travels ended when Patrick drove his car onto some railroad tracks. As they were attempting to disengage their car from the tracks two city police officers, one being the defendant, drove up in their patrol car. Officer Vaughn told Patrick to approach the police car whereupon he searched Patrick and found a bag of marijuana and some pills in his boot. Vaughn handcuffed Patrick and put him in the police car. He then searched Patrick's car. Patrick told Vaughn that he had a pistol behind the driver's seat.
Vaughn and his partner then took Patrick to a hospital for a blood and urine test, and subsequently transported Patrick to the police station where he ticketed him for DWI. Vaughn told Patrick that he "wanted" the confiscated pistol.
Vaughn then offered to sell Patrick's own pistol back to him for $300 and suggested arrangements for consummating the deal. Apparently Vaughn and Patrick then met and Patrick gave Vaughn $330 for the return of his gun and his marijuana and pills taken from him on the night of his arrest. The next day Patrick apparently contacted Vaughn in an attempt to get his DWI ticket fixed. Vaughn stated that he could provide no assistance, but called Patrick a few days later and offered to take care of the ticket in exchange for Patrick's bail money ($288). Arrangements were made for the deal but had to be postponed when Patrick was called to return to work offshore. Vaughn told him to recontact him as soon as he returned. When Patrick returned he was informed that a Lt. Delphin from the Natchitoches Police Department wanted to talk with him. Patrick met with Lt. Delphin and told him about the proposed transactions with Vaughn. With Delphin and two other police officers present, Patrick called Vaughn from the police department and apparently made arrangements to consummate their deal. The phone conversation was tape-recorded.
Patrick then borrowed $300 from a friend and went to the police station to meet with Vaughn. Before meeting Vaughn another officer recorded the serial numbers of the money that Patrick was going to give Vaughn. At the police station, Vaughn told Patrick that he could retrieve his bail money from another office and arranged to meet Patrick after the money had been procured. Patrick obtained the money and informed Lt. Delphin of the developments; he then went to the prearranged meeting spot and gave all of the money ($588) to Vaughn. Vaughn was apprehended after Patrick gave a signal to police officers as he sat in his patrol car with Patrick counting the money.
Vaughn's own testimony diverges at several points from Patrick's. Vaughn claims that he flushed the marijuana and pills down a toilet at the police station after deciding not to charge Patrick with possession of them. He claims that Patrick offered him his pistol in exchange for dismissal of the drug counts. Since Vaughn had already decided not to charge Patrick, he accepted the gun. Patrick then offered, due to sentimental reasons, to purchase the gun back from Vaughn for $300 with payment to be made the next day. Arrangements were made, and Vaughn acquiesced in the deal, his intention being to arrest Patrick for bribery at the meeting. Apparently the gun was exchanged for $300.
Patrick then requested that Vaughn "help" him with the DWI ticket. Vaughn did not then arrest Patrick because he then wanted to arrest him for the additional attempt to bribe him on the ticket. Vaughn and Patrick had some contact, initiated by Patrick, regarding the DWI within the following week. Essentially Patrick offered to pay Vaughn his bail money in exchange for the dropping of the charges. Vaughn then told Patrick to contact him when he got back from offshore.
Vaughn claimed that he upped the amount of the bribe from the bail money amount ($288) by $300 in order to make Patrick's offense a felony involving over $500. Vaughn admitted that he had attempted to get Patrick's charges dropped but claimed he did so that Patrick would not become suspicious.
*766 Vaughn agreed with the details of his apprehension, noting that he was arrested before he had a chance to arrest Patrick himself.
ASSIGNMENTS OF ERROR 4 AND 5
Defendant asserts that the trial court erred in allowing his prosecution and conviction of theft and malfeasance during the same trial under duplicate bills of information, thus violating his constitutional guarantee against double jeopardy. We must agree.
Vaughn was charged in separate bills of information with theft, in violation of La. R.S. 14:67, and malfeasance, in violation of La.R.S. 14:134.[1] Both bills cite the unlawful and fraudulent taking of $588.00 for allegedly fixing Patrick's DWI ticket as the sole basis of the charges. Thus there is "duplicity" in the language of the bills of information.
In State v. Knowles, 392 So.2d 651, (La. 1980), the Court citing Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), outlined the following criteria for examining violations of double jeopardy:
"... The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ..." State v. Knowles, supra at 654.
This rule is constitutionally required by the States. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and is embodied in La.C.Cr.P. 596:
"Double jeopardy exists in a second trial only when the charge in that trial is: (1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or (2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
Louisiana uses both the "Blockburger test" and the "same evidence test". State v. Steele, 387 So.2d 1175 (La.1980); State v. Doughty, 379 So.2d 1088 (La.1980; State v. Didier, 262 La. 364, 263 So.2d 322 (1972) and State v. Hayes, 412 So.2d 1323 (La.1982). When a defendant is charged with separate statutory crimes they need not be identical in elements or in actual proof to be the same within the meaning of the constitutional prohibition. State v. Hayes, supra.
The Louisiana Supreme Court explains the "same evidence" test in State v. Steele, 387 So.2d 1175, (La.1980) as follows:
"If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial...
The `same evidence' test is somewhat broader in concept than Blockburger the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." Id. at 1177.

*767 Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Steele, supra; State v. Hayes, supra; United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); Whalen v. United States, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980).
In a factually similar case, we found that a sheriff's prior malfeasance conviction precluded a subsequent prosecution for robbery and theft when the "identical conduct" was the basis for both the malfeasance conviction and the subsequent prosecutions. State v. Didier, 263 So.2d 322 (La.1972). In Didier the malfeasant acts were the principal method by which he committed the theft or robbery with which he was subsequently charged and hence former jeopardy barred subsequent prosecution.
In the instant case, Vaughn was tried for both offenses at the same trial. First, he was tried by the jury on the theft charge and tried on the same evidence by the Judge on the malfeasance charge. The entire thrust of the court's questioning on the malfeasance charge was directed at the sale of Patrick's pistol back to him by Vaughn, a transaction not mentioned in either bill of information.[2]
An overview of the record reveals that the conduct which formed the basis of the malfeasance charge was the same conduct proven during the jury trial on the theft charge. Therefore, we conclude that the same evidence was used to convict Vaughn on both charges. The conviction by the trial judge for malfeasance was for conduct forming a part of the basis of the jury conviction on the theft charge and the latter constitutes a jeopardy as to the former.[3] For these reasons, the trial court was in error for convicting the defendant on the malfeasance charge and that conviction is reversed.
ASSIGNMENT OF ERROR 1
Vaughn contends that the trial court erred in allowing the introduction of a taped phone conversation made without his knowledge and without a prior Miranda warning. This assertion finds no basis in Louisiana Law. Under federal law and prior jurisprudence of this state, tape recordings of telephone conversations are not violative of the Fourth Amendment protections against unreasonable searches and are admissible at trial when one of the parties to the communication consents to the taping. State v. Petta, 359 So.2d 143 (La. 1978); State v. Hennigan, 404 So.2d 222 (La.1981); 18 U.S.C. § 2511(2)(c). Louisiana has reaffirmed this view in the recent case of State v. Reeves, 427 So.2d 403 (La. 1982), rehearing January 10, 1983.
In addition to the above admissibility issue, Vaughn also asserts additional errors relating to the taped conversation. First, he contends that he was not given proper notice by the State that the tape would be introduced as a "purported confession". However, he made no such objection to the introduction of the tape at trial and as such waived the right to allege this as an error on appeal. State v. Jones, 408 S.2d, 1285 (La.1982); State v. Fisher, 380 So.2d 1340 (La.1980); State v. Bonanno, 373 So.2d 1284 (La.1979).
Second, defendant asserts that the State failed to prove that the testifying witness, Officer Delphin, had complete and sole custody of the tape thereby establishing the chain of custody. A continuous chain of custody is not essential to enable *768 the State to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized by the officer. State v. Davis, 411 So.2d 434 (La.1982); State v. Godeaux, 378 So.2d 941 (La.1979). A complete chain of custody was not clearly established. However Officer Delphin's testimony shows that he could attest to its accuracy and thus it is more probable than not that the tape introduced at trial was the actual tape made by the police of the conversation between Vaughn and Patrick and was admissible.
Third, defendant contends that the state showed no connection between the tape and the instant case. It is without question that a tape of an incriminating conversation between an extortionist and his victim is relevant at the trial of the extortionist. This assignment lacks merit.
Finally, defendant claims that the state failed to prove that the tape recording "had not been altered or changed prior to its recordation". Presumably defendant is claiming that the tape may have been "doctored" after it was made. While Delphin was not asked to attest to the accuracy of the tape after it was played to the jury he did attest during the trial as to the accuracy of the tape. Therefore, the tape's evidentiary value was not diminished. This assignment lacks merit.
ASSIGNMENTS OF ERROR 2 AND 3
By these assignments defendant contends that the trial court erred in allowing testimony concerning the sale of Patrick's hand gun back to him by Vaughn as inadmissible evidence of other crimes. The sale of the pistol and the subsequent theft occurred between the same parties but the theft charge was related only to the fixing of Patrick's DWI ticket. This appears to be factually independent to the illegal sale of the gun, and as such should have been found to be inadmissible. However, this transaction assumed relevance to the theft charge when Vaughn, in defense to the theft count, urged that he was merely attempting to set Patrick up for a bribery charge. There being a real issue as to Vaughn's intent, evidence of the earlier gun sale was admissible to show the defendant's continuing illegal course of conduct. State v. Humphrey, 412 So.2d 507 (La.1982), No. 80-KA-2412. This assignment lacks merit.
ASSIGNMENT OF ERROR 6
By this assignment defendant asserts that it was error for the trial judge to deny his request for a special jury charge regarding the definition of "fraudulent practices," an element of theft under La. R.S. 14:67. The trial court concluded that the charge requested would have confused the jury. Special jury charges need not be given if incorporated in the general charge. Defendant's proposed charge is not revealed by the record and therefore we cannot ascertain if it would have required qualification, limitation or explanation or if it was wholly correct and pertinent. It appears from the record that the trial court's decision was correct especially in light of the fact that the trial court substantially gave and covered the requested charge in its general charge. State v. Garrison, 400 So.2d 874 (La.1981).
This assignment lacks merit.
ASSIGNMENT OF ERROR 7
Defendant contends that the trial court erred in giving the following special charge requested by the State:
"Intent to deprive permanently in the definition of the theft Article 67 may be inferred from the circumstances of the transaction."
The phrase, "need not be proven as a fact but" was deleted from the special charge.
Defendant argues that this instruction created a mandatory presumption which in effect shifted the burden of proof compelling him to offer exculpatory evidence in violation of his due process rights. In support of this argument, defendant relies on the recent Supreme Court decision in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
*769 In Sandstrom, the Supreme Court found the instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts" constitutionally defective in a "deliberate homicide" prosecution by shifting the burden of proof as to intent from the state to the defendant, thereby, alleviating the state's burden of proving, beyond a reasonable doubt, every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
In the instant case, the trial court's instruction described only a permissive inferencethat the specific intent to deprive permanently might, under the facts, be implied from the manner in which the taking was effected. Such a "permissive presumption" affects the application of "the beyond a reasonable doubt standard" only if, under the facts of a case, there is no rational way the trier could make the connection permitted by the inference. County Court of Ulster County v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979).
This assignment lacks merit,
ASSIGNMENT OF ERROR 8
Defendant contends that the trial court erred in convicting him of theft without sufficient evidence. The standard of review of the sufficiency of evidence is that the reviewing court is to view "the evidence in the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. West, 408 So.2d 1302 (La.1982); No. 81-K-1657; State v. Edwards, 400 So.2d 1370 (La.1981).
The record reveals that a rational trier of fact viewing the evidence in a light most favorable to the prosecution could have concluded that Vaughn misappropriated money from Patrick by claiming that he could fix his DWI ticket knowing the ticket had no legal basis and was unenforceable. It could further have been concluded based on Vaughn's failure to return the money obtained from Patrick for the sale of the gun and his statements made at the time of his arrest that he intended to permanently deprive Patrick of his money. State v. Hardy, 376 So.2d 131 (La.1979). Accordingly this assignment lacks merit.
ASSIGNMENT OF ERROR 9
Defendant asserts that the trial court's sentence is excessive.
Vaughn received a five-year suspended sentence on the theft charge with active probation and the special condition that he spend one year in the parish jail. He was also fined $3,000 with the condition that if he did not pay the fine he would be sentenced to three years hard labor. Also he was sentenced to a six-month concurrent term on the malfeasance charge which this court has reversed. (assignments of error No. 4 and 5).
The maximum sentence for theft under La.R.S. 14:67 is ten years at hard labor and a $3,000 fine. The sentence is within the statutory range for the crime charged. The general rule, as pronounced by the Louisiana Supreme Court, is that a sentence is excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless and purposeless infliction of pain and suffering. The sentence by the trial court should not be set aside as excessive in the absence of the trial court's abuse of discretion. State v. Stegall, 377 So.2d 103, 106 (La.1979).
The sentence here does not appear to be grossly disproportionate to the crime, and we do not find any abuse of discretion by the trial court.
Defendant's theft conviction and sentence are affirmed. Defendant's malfeasance conviction is reversed.
LEMMON, J., and NORRIS, J. Ad Hoc, concur.
DENNIS, J., concurs with reasons.
SEXTON, J. Ad Hoc, concurs in part and dissents in part with reasons.
*770 CALOGERO, Justice, concurring.
State v. Reeves, 427 So.2d 403 (La.1982) disposes of defendant's A/E # 1, which I would otherwise find meritorious.
FRED C. SEXTON, Jr., Justice Ad Hoc *, concurring in part and dissenting in part.
I concur with the majority opinion in all respects except for the treatment of Assignments of Error 4 and 5. I respectfully dissent from the treatment of those two assignments and thus would affirm the defendant's conviction and sentence for both offenses.
I have serious doubt that the "same evidence" test is the appropriate one for judging double jeopardy. I believe that the "Blockburger" test is the better rule:
"... The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).
To the extent that the majority finds solace in State v. Knowles, 392 So.2d 651 (La.1980), I disagree. Knowles involved the subsequent prosecution for conspiracy to commit murder after a not guilty verdict for murder. In Knowles the Court discussed the fact that Louisiana had used both the "Blockburger" and "same evidence" tests and discussed the case in that light. However, the case was not decided under double jeopardy rules. The Knowles Court specifically found that the subsequent prosecution there was barred by the doctrine of collateral estoppel. See Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).
However, in my view, all of the above is basically irrelevant because under either test the defendant in this cause was not subjected to double jeopardy. In order to prove malfeasance the state must prove that the defendant was a public official, which is irrelevant to the theft charge. This is an "additional fact"per "Blockburger"; or an item of "additional evidence" per "same evidence." However, I confess that I am unable to distinguish this cause from State v. Didier, 263 So.2d 323 (La. 1972), and would overrule Didier and any progeny, believing the dissent of then Chief Justice McCaleb to be the best view.
Thus I would affirm the conviction and sentence for malfeasance as well.
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Watson and Lemmon.
[1] "Theft is defined, in pertinent part, as:

Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Malfeasance is defined as:
Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner."
[2] The initial bill of information alleged that defendant "did unlawfully commit theft valued over $500 by fraudulent practices by the taking of $588 cash from John A. Patrick, Jr.... R., Vol. I, p. 7." The malfeasance count charged defendant with "performing his duty in an unlawful manner by taking $588 cash from John A. Patrick, Jr." R., Vol. III, p. 7. Thus, neither charge concerned the alleged pistol sale from defendant to Patrick, though the latter conduct would most certainly have constituted a separate offense and defendant had been advised of the state's intention to use this evidence at trial.
[3] The defendant may well have been properly found guilty of malfeasance for the sale of the gun, a separate offense, but he was not so charged.