501 So.2d 834 (1986)
STATE of Louisiana
v.
Joseph ROUSELL.
No. KA-5885.
Court of Appeal of Louisiana, Fourth Circuit.
December 22, 1986.
Writ Denied April 20, 1987.
*835 Bruce G. Whittaker, Courtenay, Forstall, Grace & Hebert, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Rockne L. Moseley, Asst. Dist. Atty., New Orleans, for appellee.
Before GULOTTA, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
Defendant, Joseph Rousell was charged with forcible rape and found guilty as charged. R.S. 14:42.1. Rousell was sentenced to forty years at hard labor without benefit of parole, probation or suspension of sentence for the first two years. He was also ordered to pay $80 court cost or in default thereof to spend an additional thirty days in the custody of the Department of Corrections. Defendant appeals his conviction and sentence relying upon seven assignments of error.[1] We affirm the defendant's conviction and sentence.
On January 31, 1985, the victim, a fourth grade school teacher living at 1021 Valmont Street, was awakened at 2:00 a.m. by a black male, weighing approximately 170 pounds and standing approximately 5' 9". Ms. Dearden screamed and the perpetrator jumped on her bed, stuffed a rag in her mouth and moved a knife towards her throat. The perpetrator then pushed the victim down a small hallway and into her living room where he forced her to perform fellatio upon him before he raped her vaginally.
*836 Subsequently, the perpetrator, sitting on the couch, and the victim, on the floor, had a brief discussion. The victim assured the perpetrator that she would wait ten minutes before calling the police. At this point, they returned to her bedroom and he asked her if she enjoyed their sexual encounter and told her that he had not intended to wake her up. The perpetrator then exited through a window and the victim waited approximately ten minutes before seeking help. Following the ten minute waiting period, the victim attempted to telephone Dr. Halsey, her landlord who lived upstairs, but was prevented from doing so because her phone was not working; she then ran upstairs and sought help. Dr. Halsey notified the police.

Assignment of Error No. 1

Physical Lineup
Defendant, by this assignment of error contends that the trial court erred in denying a motion to suppress the identification. Rousell argues that the identification procedures utilized in the photographic and physical lineups were suggestive and that there existed a likelihood of misidentification.
We do not consider the merits of the defendant's objections to the physical lineup as we find that these objections have been waived.
A week before trial a physical lineup was conducted at the request of the victim. During the selection process and the physical lineup the defendant's counsel was present. Following the lineup, no motion to suppress this identification was filed. When the trial judge called for a hearing on any such motion counsel stipulated that there was no objection to this process since the defendant was represented throughout this lineup process. Additionally, when the results of the physical lineup were introduced at trial no objection was lodged by the defendant to their admissibility.
Under these circumstances we conclude that any objections which the defendant may have had against the physical line up process and its results have been waived.

Photographic Lineup
In order for a defendant to succeed in the suppression of an identification, resulting from a photographic lineup, he must prove, both, that the identification procedure was suggestive and that there exists a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La., 1984) citing, Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
The United States Supreme Court, in Manson, supra, enumerated five factors to be considered in determining whether an identification is suggestive:
(1) the witness's opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness's certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification.
The trial judge's determination that identification evidence is admissible is entitled to great weight and will not be disturbed on appeal unless the preponderance of the evidence clearly so mandates. State v. Gordon, 336 So.2d 793 (La., 1976).
Defendant contends that the identification procedure utilized in this case was suggestive because after the victim had tentatively identified the defendant from a photographic line up, she was told that the person she identified was already under arrest. Additionally Rousell argues that this identification process was suggestive in that he was the only person who was the same in the photographic and physical displays.
Defendant also argues that the victim's condition at the time of her initial encounter with her assailant contributed substantially to a misidentification in that she was awakened early in the morning and viewed *837 her attacker only briefly in a dimly lighted house.
The record reveals that on January 31, 1985 at approximately 2 a.m., the victim, an elementary school teacher, was awakened in her apartment at 1021 Valmont Street in New Orleans. She sat up in her bed and observed a man standing at the foot of her bed holding a knife over his head. A light shone into the hall and into the victim's bedroom from a fixture in the bathroom which contained two sixty watt lightbulbs. At the time, according to the victim, she clearly observed the assailant's face, as it was not covered. During the attack, the assailant's face was touching that of the victim and her face was turned to the side. Following the initial attack, the victim's arms were forced behind her back and she was made to walk from the bedroom to the living room area. As she proceeded down the hall towards the living room, with her assailant behind her, she observed him turn off the bathroom light. Upon reaching the living room the victim was instructed to lie flat on the floor. The living room is divided from the kitchen by a snack bar. A night light in the kitchen was shining into the living room. The living room also was lighted by a fixture on the outside of the house, near the front door. The light was shining into the partly opened draperies of that room. The victim testified that following oral sex, which occurred when she was in the living room, she pulled her head back and she could again see her attacker's face. The entire incident occurred over a 20 minute period.
Following the departure of the rapist, the police were summoned by the victim's landlord. The victim gave the landlord a brief description of her attacker as being a dark skin Black male approximately 5 feet 10 inches tall. She next described her assailant to Detective Louis Kissner of the New Orleans Police Department's Rape Investigation Squad on the day of her attack. The victim indicated that her assailant was a Black male in his 20's, muscular build, approximately 5 feet 10 inches tall, medium length curly hair, with medium to large lips. The next day the victim drew a sketch of her attacker indicating distinguishing features.
Detective Kissner notified the victim that he would be bringing some photographs for her to view. On February 23, 1985 at 1 a.m. Detective Kissner arrived at the victim's apartment with six photographs.
The pair went into the kitchen where the victim was given the six photographs. According to Detective Kissner the persons depicted in the photographs had similar characteristics as those of the assailant and the name plates of the pictures were covered over with tape. No suggestions were made to the victim as to which, if any, photograph she should choose. The photographs were not presented in a manner that would suggest one over another.
The victim laid her sketch of the assailant on the bar. The photos were also on the bar and the victim was asked if she had seen any of these persons. The victim looked at each picture then she pushed two photos aside. She then selected picture number 2 as this person had the same eyes, protruding cheek bones, and the permed hair condition as the person who attacked her. According to Detective Kissner, the victim made a "strong tenative identification." She thereafter requested a physical lineup. Following this 15 minute photographic identification process, Detective Kissner advised the victim that the person whose photograph she had chosen was already in jail.
A week before trial a physical lineup was conducted at which time the victim again selected the defendant as being the person who had raped her.
Applying the principles ennunciated in Manson, supra, we find that the identification was not suggestive nor was it subject to misidentification.
Our review of the record indicates the victim, over a period of approximately twenty minutes, had at least two periods of face to face encounter with her assailant. The first period occurred before her attack as the assailant stood in the doorway of her *838 bedroom with the light from a nearby bathroom illuminating the doorway and the assailant. The second face to face encounter occurred after the victim was forced to engage in oral sex with her assailant. This time the victim was in the living room which was illuminated by an outside light and a night light in the adjacent kitchen. During these encounters the victim was composed and attentive as she attempted to reason with her attacker so as to avoid being killed.
The victim sketched her assailant on the day following her attack. She gave consistent and non-confused descriptions of the defendant to her landlord and the police. The defendant's physical characteristics matched those of the victim's sketch and the descriptions given by the victim. At the time of the photographic line up, twenty-three days after the crime, the victim made a "strong tentative identification" of her assailant based upon his distinguishing physical characteristics. The presentation of the photographs did not suggest one over another. Likewise no suggestion was made that any of the photographs contained a picture of the victim's rapist. The statement by Detective Kissner that the photo chosen by the victim was of a person who had already been jailed could not have influenced her selection of the defendant at the photographic line up.
The preponderance of the evidence does not mandate a reversal of the determination of the trial judge regarding the admissibility of the identification evidence. Rather, the evidence supports the decision of the trial judge in denying the defendant's motion to suppress the identification.
For these reasons, Assignment of Error No. 1 lacks merit.

Assignment of Error No. 6.
In Assignment of Error Number 6 the defendant argues that his sentence is unconstitutionally excessive. La. Const. Art. 1, Sec. 20.
The statutorily prescribed penalty for forcible rape is imprisonment at hard labor for not less than two years nor more than forty years. R.S. 14:42.1.
A sentence which is within statutory limits may nonetheless violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.,1979). A punishment is unconstitutionally excessive if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering or (2) is grossly out of proportion to the severity of the crime. State v. Lathers, 444 So.2d 96 (La.,1983) citing State v. Telsee, 425 So.2d 1251 (La.1983). In reaching a determination of whether a sentence is excessive, the reviewing court is aided by the judge's reasons for imposition of sentence. State v. Stegall, 377 So.2d 103 (La., 1979). The law mandates that the trial court state for the record the considerations and factual basis for the sentence imposed. C.Cr.P. Art. 894.1 State v. Forshee, 395 So.2d 742 (La., 1981). The sentence imposed by the court must be individualized, that is, adapted to the offender as well as to the offense. State v. Wright, 384 So.2d 399 (La., 1980). The trial court need not articulate every aggravating and mitigating circumstance, but the record must reflect that the court adequately considered the sentencing guidelines in particularizing the sentence to the defendant. C.Cr.P. Art. 894.1. State v. Franks, 373 So.2d 1307 (La., 1979) Where the trial court has considered sentencing guidelines and so states its factual basis for the imposition of sentence, the appellate court will focus upon whether there exist an abuse of discretion. State v. Finley, 432 So.2d 243 (La., 1983). In making this determination, the reviewing court will consider whether the penalty is so disproportionate to the crime as to shock society's sense of justice. State v. Bonanno, 384 So.2d 355 (La., 1980).
In this case the defendant was sentenced to forty years at hard labor without benefit of parole, probation or suspension of sentence for the first 2 years. He was fined $80 court cost or in default thereof to spend an additional thirty days in the custody of the Department of Corrections.
*839 The record reveals that the victim was confronted in her apartment as she slept in her bedroom at 2 a.m. on the morning of January 31, 1985. The perpetrator entered into her residence through a window. After awaking she observed the perpetrator standing in the doorway of her bedroom. He thereafter thrust himself upon his victim pushing her flat unto her bed. He covered her mouth with his hand and put a knife to her throat. A struggle ensued and the victim sustained a cut to her hand from the knife. The appellant shoved a dirty rag in the victim's mouth and demanded money, change and jewelry. Thereafter the victim was dragged from her bed and forced through the house being knocked into various objects within the house as she moved along. She was then forced to the floor, her back was cut with a knife and she was threatened with rape. She then was raped orally and vaginally. She was also threatened with more bodily harm. Before leaving the defendant told the victim that if she moved or screamed that he would return and "take care" of her.
In sentencing the defendant the trial judge considered the statutory guidelines for sentencing and articulated her basis for the record. The sentencing judge took into account the first offender status of the defendant and his youth as mitigating factors. She also, however, considered his demeanor and the severity of his offense as well as its effect upon the victim. The judge perceived the defendant to be a "very dangerous person" who could not "be permitted to remain among decent people." She also stated that the defendant was "one of the most serious and despictab[y] people that has ever come before me." Additionally, the judge found that the defendant "raped the victim," "subjected her to the most inhuman behavior" and took from her "her dignity and humanity." The judge also observed that the victim sustained "incredible damage" such that "she was shaking like a leaf." The victim was also seen to be traumatized by the defendant and she suffered physical injury of a cut to her hand during the assault.
The court therefore adequately considered the sentencing guidelines and particularized the sentence to the offender. Considering the severity of the offense and the danger that this defendant poses to society at large, as well as the effect of this offense upon the victim, we cannot say that a sentence of 40 years imprisonment is such a disproportionate sentence (considering the crime) as to shock society's sense of justice. For these reasons we find that the trial court did not abuse its great discretion in sentencing this defendant to the maximum penalty allowed for forcible rape.
For these reasons this assignment of error is meritless.
For the foregoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED
NOTES
[1] Although the defendant relies upon seven assignments of error, he has briefed only 2 assignments. Accordingly, assignments Numbers 2 through 5 and 7 are considered abandoned. Uniform Rules, Court of Appeal, Rule 2-12.4.