563 So.2d 334 (1990)
STATE of Louisiana, Plaintiff-Appellee,
v.
Lonarld Ray GRIFFIN, Defendant-Appellant.
No. CR 89-1152.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1990.
*336 John Crochet, Public Defender Office, Lake Charles, for defendant-appellant.
Richard Ieyoub, Dist. Atty. and Beth Conrad, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before LABORDE, KNOLL and KING, JJ.
KING, Judge.
This appeal presents for review the issues of whether the trial judge erred in not dismissing a prospective juror for cause, in denying a motion for a mistrial based upon the alleged illegal use of peremptory challenges, in denying a motion for a mistrial based upon the State's opening statement, and in denying a motion for arrest of judgment based upon double jeopardy.
On December 1, 1988, Lonarld Ray Griffin (hereinafter defendant), was indicted by the grand jury for one count of aggravated rape, in violation of La.R.S. 14:42, and one count of attempted first degree murder, in violation of La.R.S. 14:27 and 14:30. Defendant was arraigned and pled not guilty. Defendant was tried and convicted by a jury of both of these crimes on April 26, 1989. He was sentenced on May 17, 1989, to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on the aggravated rape charge and to fifty years imprisonment at hard labor on the attempted first degree murder charge, with the sentences ordered to run concurrently. Defendant appeals his convictions and sentences asserting five assignments of error. We affirm.

FACTS
At trial, Leslie Ann Logan (hereinafter the victim), testified that on November 8, 1988, she was delivering newspapers for the Lake Charles American Press and arrived at approximately 5:00 A.M. at the housing projects on the northwest side of Sulphur, Louisiana.
The victim stopped her car, left her high beam headlights on, took her car keys with her, and made her last delivery at Building 18 on Fowler Drive. The victim saw a shadow from the headlights and then saw the legs of a person walking toward her as she delivered her last paper. The victim tried to return to her car, but a man jumped in front of her with a knife in his hand.
This person, who was later identified as defendant, was a black male dressed in a dark colored T-shirt, a jean jacket, jeans, and tennis shoes. The victim screamed when the defendant jumped in front of her and she asked him not to hurt her. The defendant responded that he did not want to hurt her but wanted to make love.
While holding a knife in his hand, the defendant grabbed the victim by the hair and dragged her to the side of the building where he ordered her to remove her pants. The victim resisted and the defendant placed a knife to her throat and threatened to kill her if she further resisted. The victim complied with the defendant's order and removed her pants and panties. At that time, the defendant raised the victim's shirt and put his mouth on her breasts.
The defendant grabbed the victim by the hair and dragged her toward the street. They stopped in front of the victim's car, and, while standing in front of the car, another car passed. The victim was then able to clearly see the defendant's face *337 because she had left her highbeams turned on when she exited her car. The defendant again threatened the victim and told her that he would kill her if she screamed or ran.
The defendant dragged the victim by the hair toward the woods. The victim kept stopping but the defendant continued to pull her by the hair and threaten her with the knife. When they were further into the woods, they came upon a clearing by a ditch at which time the defendant ordered the victim to lie down on the ground. The victim pled with the defendant not to rape her because she was pregnant. The defendant stated that he would not hurt the victim or the baby if she cooperated with him. The defendant raped the victim while he held the knife and threatened her. Afterward, the defendant told the victim he could not trust her about not going to the police and that he would have to kill her anyway.
The victim tried to grab the knife from the defendant and then fell into a ditch. The defendant told the victim that she was stupid, hit her on the side of the face, and pulled her from the ditch by her hair. At this time the defendant told the victim that he did not want to hurt her but wanted to make love again. He then dragged the victim further into the woods and raped her again. When the defendant got up, he ordered the victim to stay on the ground. However, the victim got up and tried to escape. She ran through the woods toward the apartments. As she ran, she hit her head on a tree, knocking her down, and the defendant jumped on top of her and tried to stab her in the chest. The defendant positioned himself behind the victim, who was still on the ground, and then sliced the victim across the face and yelled at her. When the victim put her arms up to defend against the knife cuts, defendant slashed her arms and hands. The victim found a board and began swinging it at the defendant until she lost it.
The defendant then ran off, leaving his knife behind. The victim picked up the knife and started toward the apartments. As she was exiting the woods, the defendant ran toward her with something in his hands. The victim ran to an apartment door, broke a window with her hand and pounded on the door and a window.
The occupants of the apartment, Theresa Word, Darnell Word, and Brady Smith, testified that they let the victim inside, assisted her, and called the police and an ambulance. When the victim entered the apartment, she dropped the knife to the floor. She was cut extensively and bleeding so badly that Ms. Word testified she could not tell, at first, that the victim was naked from her waist down. The victim was later transported to a local hospital where she was administered emergency treatment and remained for about six days.
The defendant was questioned by local police officers later during the day of November 8, 1988. During this questioning, defendant mentioned a robbery of his apartment, and he was taken to the police station to identify some stolen property which had been recovered. Theresa Word, the person who was in the car which drove by and who saw the defendant holding the victim in front of the victim's car, was also at the police station. Ms. Word recognized the defendant as the man she had seen and immediately told the police.
The clothes that the suspect had been described as wearing at the time of the rape and attempted murder were recovered. The defendant was then placed under arrest by the police. The defendant was also positively identified by the victim while she was in the hospital and again at trial. Defendant admitted raping and slashing the victim but contended that he was intoxicated at the time this occurred.
On April 26, 1989, defendant was found guilty by a jury of twelve of aggravated rape and attempted first degree murder.
On May 17, 1989, the trial judge sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for the aggravated rape charge and fifty years imprisonment at hard labor for the attempted first degree murder charge, with the sentences ordered to run concurrently.
*338 The defendant now appeals asserting five assignments of error.

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends that the trial judge erred in denying his challenge for cause of prospective juror Number 141.
Where the accused has exhausted all of his peremptory challenges before completion of the jury panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. State v. Comeaux, 514 So.2d 84 (La. 1987). "A defendant need show only two things to obtain reversible error: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant, and (2) that the defendant exhausted all of his peremptory challenges ..." State v. Comeaux, supra, at page 93. See also, State v. Albert, 414 So.2d 680 (La.1982); La.C. Cr.P. Art. 800.
The record and minutes of the voir dire of the prospective jurors show that defendant did exhaust all of his peremptory challenges, one of those challenges being used on juror Number 141, before the final selection of the jury. Therefore, we will consider whether the trial court erred in not sustaining defendant's challenge for cause of prospective juror Number 141. A trial judge is given broad discretion in ruling on a challenge for cause, and that ruling will not be disturbed absent a showing of abuse of discretion. State v. Comeaux, supra; State v. Baker, 528 So.2d 776 (La.App. 3 Cir.1988).
The defendant raised intoxication as a defense in his case, and he claims that juror Number 141 was biased and partial with regard to problems dealing with alcohol and drug abuse. Juror Number 141 stated that her husband was a recovering alcoholic and indicated that she might have problems in the trial due to her husband's chemical dependence. The juror commented that she had some animosity towards chemically dependent people.
Juror Number 141 affirmatively stated that she would look at all the evidence and that she could accept the law as given to her by the court and apply it to the facts despite her feelings with regard to drugs and alcohol. Juror Number 141 also declared, and the court was satisfied, that she could render an impartial verdict according to the law and evidence. See La.C.Cr.P. Art. 797(2). For these reasons, we find no abuse of discretion by the trial judge under these circumstances in denying defendant's challenge for cause of prospective juror Number 141. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant argues that the trial court erred in denying defendant's motion for mistrial based upon the alleged illegal use of peremptory challenges by the State.
La.C.Cr.P. Art. 795 states in relevant part that "[a] peremptory challenge by the state shall not be based solely upon the race of the juror." In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the equal protection clause of the U.S. Constitution forbids the prosecutor from excluding potential jurors solely on account of race, or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant.
The Court enunciated an evidentiary standard for establishing purposeful discrimination arising out of the use of peremptory challenges for jury selection. Under Batson, the defendant must establish a prima facie case of purposeful discrimination in the selection of the petit jury. To meet this burden the defendant must show that he is a member of a racially cognizable group, that the prosecutor used peremptory challenges to remove from the venire members of defendant's race, and that the facts and other relevant circumstances raise an inference that the prosecutor used the jury selection practice to exclude veniremen on account of their race. Batson v. Kentucky, supra, 106 S.Ct. at page 1723. Once the defendant makes a prima facie case of purposeful discrimination, the burden then shifts to the State to come forward with racially neutral explanations *339 for its challenge of black jurors. Batson v. Kentucky, supra, at page 1723.
In the present case, there were seven blacks drawn from the general venire. One prospective black juror was excused for cause because she was illiterate. Four of these prospective black jurors were excused by the State through use of peremptory challenges. The other two black jurors were accepted by the State.
Even if defendant showed a prima facie case of racial discrimination, we find that the State carried its burden of responding with credible, non-racial explanations for the use of its peremptory challenges.
The State excused Mrs. Antoine because she was under the care of a doctor and on medication. The State also noted that Mrs. Antoine requested that the judge excuse her, that she did not want to serve, and that she answered questions during the voir dire very tentatively. The record of the voir dire examination of this juror supports the State's reasons for its challenge of her.
With regard to Mrs. Teal, the State stated that its reason for its challenge of Mrs. Teal was that she was difficult to understand and very reluctant to serve. Mrs. Teal stated during her voir dire that she did not want to serve, did not want to travel from Vinton, Louisiana because it required too much gasoline, that her car breaks down a lot, and that she might have problems getting to the court or home afterwards. The record supports the State's reasons for challenge of this juror.
The State said it excused Mr. Doucet because he laughed the whole time he was being questioned, leaned back with cocked arms, stated he did not want to get involved, and was "totally off the wall." When being questioned, Mr. Doucet stated that he had a "feeling" he was on jury duty when he went to work that morning. Mr. Doucet reported stating to his boss "[l]et me call the clerk of court. I believe I'm on jury duty, just out of the blue, and I was." The State's doubts with regard to Mr. Doucet were reasonable and the record supports the State's reasons for challenging this juror.
Lastly, the State stated it excused Mrs. Joseph because she answered too hesitantly and because her voir dire also showed that she had a brother that was convicted and served time for theft. These reasons for challenge of this juror are also supported by the record.
The trial court accepted the reasoning that the State presented for exercise of its challenges of prospective black jurors, and concluded that the State did have valid reasons for not accepting the possible jurors and that racial prejudice in excluding these prospective jurors was, in fact, not practiced by the State. After examining the record, we cannot say that the trial judge was manifestly wrong in this conclusion, nor that he abused his discretion. For these reasons, we find that this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
The defendant contends that the trial judge erred when he denied defendant's motion for a mistrial based on a statement made by the State during its opening argument.
In the State's opening statement, reference was made to the fact that the victim was two to three months pregnant at the time of the offense. The defendant moved for a mistrial and objected to any reference to the victim's pregnancy, at the time of the offense, on two grounds. First, defendant argues that the "rape shield statute," La.C.E. Art. 412, prohibits evidence of specific instances of the victim's past sexual behavior with persons other than the accused. Second, defendant argues that the evidence was irrelevant and, if relevant, the prejudicial effect outweighed the probative value under La.C.E. Art. 403. The trial judge denied the motion for a mistrial.
The "rape shield statute" is clearly not applicable under the circumstances in this case. La.C.E. Art. 412 is intended to protect the victim from improper character attacks of the accused. La.C.E. Art. 412, *340 comment (g). Here, the State simply told the jury of the victim's physical condition at the time of the commission of the offense.
However, the fact of the victim's pregnancy is irrelevant because it has no tendency to make the existence of any fact that is of consequence to the determination of the action [i.e., aggravated rape and attempted first degree murder] more probable or less probable than it would be without the evidence. See, La.C.E. Art. 401. Nevertheless, absent bad faith on the part of the prosecutor or clear and substantial prejudice, a reference in the opening statement to evidence later ruled inadmissible is not grounds for a mistrial. State v. Maillian, 464 So.2d 1071 (La.App. 1 Cir.1985), writ den., 469 So.2d 982 (La.1985).
In this case, evidence of the victim's pregnancy was never ruled inadmissible. In fact, the record shows evidence of the victim's pregnancy was admitted twice during the course of the trial without objection from the defense attorney. In light of this testimony, there was no prejudice to defendant caused by the State's remark during its opening statement. Defendant has also not shown any prosecutorial bad faith or clear or substantial prejudice; therefore, the trial court did not err in refusing to grant a mistrial on this ground.
Furthermore, for this Court to reverse the defendant's conviction on the grounds of the State's remark during argument, this court must be convinced that the jury was influenced by the remarks and that those remarks contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979); State v. Berain, 360 So.2d 822 (La.1978); State v. Williams, 524 So.2d 1221 (La.App. 3 Cir.1988), writ den., 530 So.2d 93 (La. 1988). In this case, we cannot find that the comment contributed to defendant's conviction, especially in light of the overwhelming evidence of defendant's guilt. For this reason, this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant contends that the trial judge erred in allowing the admission into evidence of an exhibit. Rather than briefing this assignment of error, defendant stated in his brief that it is abandoned. Assignments of error not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

ASSIGNMENT OF ERROR NUMBER 5
Defendant contends that he was exposed to double jeopardy when the trial court imposed sentence on the count of aggravated rape and also on the count of attempted first degree murder. Defendant argues that for this reason the trial judge erred in denying his motion in arrest of judgment.
Louisiana uses both the "Blockburger test" and the "same evidence test" in determining whether double jeopardy exists. La.C.Cr.P. Art. 596; State v. Vaughn, 431 So.2d 763 (La.1983) and cases cited therein.
The "Blockburger test" was set out by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), where the Court stated:
"... The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ...". Blockburger v. United States, 284 U.S. 299, at page 304, 52 S.Ct. 180, at page 182, 76 L.Ed. 306, at page 307 (1932).
The "same evidence test" has been adopted by the Louisiana Supreme Court and was explained by the Court in State v. Steele, 387 So.2d 1175 (La.1980), as follows:
"If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.

*341 The `same evidence test' is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." (Citation omitted.) State v. Steele, 387 So.2d 1175, at page 1177 (La.1980).
See also, State v. Vaughn, supra, at page 766.
Therefore, "[d]ouble jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct." State v. Vaughn, supra, at page 767, and cases cited therein.
Defendant is correct in his argument that he cannot be prosecuted for both attempted first degree murder and the enumerated felony (i.e. aggravated rape) where both counts involve the same elements and arise from a continuous offense. See State v. Stewart, 400 So.2d 633 (La. 1981); State v. Jones, 525 So.2d 1149 (La. App. 3 Cir.1988); State v. Rogers, 462 So.2d 684 (La.App. 4 Cir.1984), writ den., 478 So.2d 899 (La.1985); State v. Cotten, 438 So.2d 1156 (La.App. 1 Cir.1983), writ den., 444 So.2d 606 (La.1984). However, in this case, the jury could have correctly found that defendant committed three separate offenses, that is, offenses that were not continuous.
In State v. Carter, 412 So.2d 540 (La. 1982), the Louisiana Supreme Court, in upholding the decision of the trial court not to sever the offenses for which defendant was tried, held that where there was only one victim and the victim related in simple terms the consecutive events constituting each of the crimes charged and the elements thereof, and the elements of each offense were carefully and clearly explained to the jury, the trier of fact was able to compartmentalize the events and apply the correct law to each offense.
Likewise, in the present case, the victim testified clearly as to the events which occurred. The victim was forced into the woods and raped, after which defendant told the victim he had to kill her. The victim tried to get the knife away from defendant and escape, but she fell into a ditch. Defendant caught her and forced her further into the woods, where he raped her again. When the defendant got up, he ordered the victim to stay on the ground but the victim tried to run away. The defendant again caught her, attempted to stab her in the chest, and sliced her face, hands, and arms with his knife. The record shows that the trial court correctly charged the jury as to the elements of the crimes of aggravated rape and attempted first degree murder.
As the Court found in Carter where the victim also tried to escape, we also find, based on the facts of this case, that the trier of fact could compartmentalize the events and apply the law intelligently to each offense. State v. Carter, supra, at page 544.
The jury could have found defendant guilty of aggravated rape, based on defendant's first rape of the defendant, and attempted first degree murder, based on defendant's second rape of the victim and the surrounding circumstances. The jury could have also found the defendant committed aggravated rape based on the rapes and committed attempted first degree murder when he attacked the victim after she was running away subsequent to the second rape. We cannot say that the jury's determination that the chain of events had been broken and separate crimes committed is incorrect. The determination as to whether a chain of events has been broken, constituting separate crimes, is a question of fact for the determination of the jury. State v. Jones, supra, at page 1151, and cases cited therein.
We find the jury correct in its determination that separate crimes were committed by the defendant, one which could constitute aggravated rape, and one which could constitute attempted first degree murder. Therefore, the defendant was not subjected to double jeopardy and this assignment of error lacks merit.
For these reasons, the convictions and sentences of defendant are affirmed.
AFFIRMED.