| iPETERS, Judge.
The defendant, Issac Cole, Jr., was originally charged "with distribution of cocaine, a Schedule II drug as defined by La.R.S. 40:964(A)(4), a violation of La.R.S. 40:967(A)(1); conspiracy to commit distribution of cocaine, a violation of La.R.S. 40:967(A)(1) and La.R.S. 14:26; and attempted introduction of contraband in the form of cocaine into and upon the premises of the Allen Parish Jail, a violation of La.R.S. 14:402(E)(5). The state later amended the distribution of cocaine charge to charge that the distribution occurred within one thousand feet of property used for school purposes, a violation of La.R.S. 40:981.3(A)(1). After trial by jury, the defendant was found guilty of distribution of cocaine within one thousand feet of property used for school purposes and of attempted introduction of contraband into and upon the premises of the Allen Parish Jail. The defendant was acquitted of the charge of conspiracy to commit distribution of cocaine. On the distribution conviction, the trial court sentenced the defendant to serve twenty years at hard labor without benefit of Lparole, probation, or suspension of sentence and ordered him to pay a $50,-000.00 fine. On the attempt conviction, the trial court sentenced him to serve five years at hard labor with two years of that sentence suspended. Both of these sentences were ordered to run consecutively with each other and with any other sentence previously imposed on the defendant.
DISCUSSION OF THE RECORD
Both convictions arose out of one incident which occurred on Sunday, October 16, 1994. On that day, and immediately prior thereto, the defendant was incarcerated in the Allen Parish jail, but his incarceration was subject to a work-release program wherein he was allowed to leave the jail during the day and return in the evenings.
Ronald James Cole, who is no relation to the defendant, testified that on October 16, 1994, he was a trustee in the Allen Parish Jail and that as trustee he was generally released during the daylight hours to perform various tasks in and around the jail as assigned to him by the Allen Parish Sheriffs Office. On October 15, 1994, anticipating that he would be able to roam the jail vicinity as a trustee and knowing that the defendant was on work release, he requested that the defendant obtain for him a $50.00 rock of cocaine and deliver it to the jail facility early the next morning.
Somehow, the Allen Parish Sheriffs Office became aware of this request, and the trustees were not released at 7:00 a.m. as usual but rather were kept locked up until noon. This extra time allowed Deputy Sheriffs Randall James Deshotel and Chuck Hurst to make arrangements to observe and intercept the proposed drug transfer. By the time Ronald Cole reached the area where the transfer was to occur on October 16, the two officers had positioned themselves in a bus parked nearby where they could have a clear view of what might take place.
Ronald Cole testified that he and another trustee, Aaron Wesley Johnson, were | gin the mechanic shop of the parish jail when he observed the defendant’s green Oldsmobile on the nearby highway. He motioned to the driver of the vehicle, and the vehicle proceeded toward him. As the vehicle approached, he recognized a second individual in the car as Mack “Boudin” Slate and observed Slate throw something out of the window. Assuming it to be his requested cocaine, Ronald Cole then retrieved the package, which was a Winston Gold cigarette package crumpled up with something inside. Cole then proceeded with Johnson back to the mechanic shop. The two officers then got out of the bus and began to approach Cole and Johnson. Cole threw the crumpled cigarette package into the mechanic shop and the two men began to *834 run from the officers. However, they were both apprehended, and the discarded package was recovered. The contents of the package were later tested and found to be cocaine.
Although Cole testified that he was not able to recognize the driver of the vehicle that delivered the cocaine, he recognized the car as the defendant’s and was aware that the defendant smoked Winston Gold cigarettes.
Johnson testified that although he was not aware that cocaine was about to be delivered, Cole had asked him to be a lookout for him. He also recognized the defendant’s car as being the vehicle that delivered the package, and he too could not see who was driving. He recognized Slate as being the passenger and observed Cole pick up the package. He also was familiar with the defendant and Slate and knew that the defendant smoked Winstons while Slate generally smoked Kools. Both Cole and Johnson were charged, pled guilty, and as a part of their plea bargain received concurrent sentences in exchange for their testimony against the defendant.
Mack Slate testified that he had been riding with the defendant on October 16, in the defendant’s green Oldsmobile. He also claimed that he was not aware of the potential drug transaction but that they did drive to the Allen Parish Jail, where he saw 14Cole motion for the defendant to drive forward. According to Slate, the defendant attempted to throw a package out of the window, but it dropped back into Slate’s lap. Slate testified that he then picked up the package, which he identified as a crumpled up Winston Gold cigarette package, and threw it out of the window. He also pled guilty to distribution of cocaine, and as a part of his plea agreement, he received a sentence of seven years at hard labor, which was suspended. He was placed on five years probation and ordered to pay a fine. As a condition of his plea agreement, he agreed to testify against the defendant.
Deputy Deshotel testified that he observed the green Oldsmobile approaching the courthouse but was not able to identify the driver. He was familiar with the defendant and had seen the defendant driving that particular ear in the past. Additionally, with the help of a pair of binoculars, Deputy Deshotel obtained the license number of the vehicle. A later check with the Department of Motor Vehicles revealed that the ear involved was owned by the defendant. He and Deputy Hurst measured the distance from the location of the drug transaction to the nearby Oberlin Elementary School and found that the transaction occurred approximately 255 feet from the front door of the school and 100 feet from an agricultural building located on the school property. Deputy Hurst also recognized the green Oldsmobile as being one he had seen the defendant driving in the past and recognized Slate as the guest passenger.
The defendant contends that he was in Lake Charles, Louisiana, at the time of the drug delivery. In support of this alibi, he presented the testimony of Lorena Guillory January, a Lake Charles resident who works at the W.O. Moss Regional Medical Center. She recalled that the defendant and his wife appeared at her home between 11:30 a.m. and 12:30 p.m. on October 16, seeking assistance in gaining access |5to the defendant’s sister at the W.O. Moss Regional Medical Center. The defendant’s sister was hospitalized in the psychiatric unit of the hospital, and no one could see her without a “code number,” which the defendant and his wife did not have. They had hoped Ms. January would be able to obtain the number for them so that they could see his sister on that day. Ms. Januaiy testified that she made a phone call in an effort to obtain the appropriate number but was unsuccessful. She offered the defendant and his wife lunch, but they declined and ate a piece of cake and drank some punch, instead. According to Ms. January, the couple left sometime around 1:30 p.m.
The defendant’s wife, JoAnn Cole, also testified that the couple was in Lake Charles on October 16. She corroborated Ms. January’s testimony that they had appeared at her house, seeking a means of access to the psychiatric ward where the defendant’s sister was being treated. She testified that the defendant’s Oldsmobile was still at their home in Oberlin with the hood up because *835 the defendant had been in the process of changing the oil in the vehicle.
Mrs. Jimmie Lee Skinner, the defendant’s neighbor and his sister’s mother-in-law, testified that on October 16, 1994, she observed his vehicle at his house around noon. However, on cross-examination by the state, Mrs. Skinner made it clear that she was not really sure of the date involved but simply that at sometime, she had observed his vehicle at the house.
The testimony of Ms. January and Mrs. Cole was attacked by the state in rebuttal through the testimony of Ronald Craiger, the investigator for the District Attorney’s Office. Mr. Craiger presented tape recordings of interviews he had with both ladies concerning the events of October 16, 1994, and pointed out numerous inconsistencies between the trial testimony and the statements on the tapes.
After being presented with this evidence, the jury returned a verdict of guilty on |6two of the charges and not guilty on the remaining charge. The defendant has appealed his convictions and sentences, asserting seven assignments of error.
OPINION
This appeal presents a unique procedural situation which requires an unusual disposition. In his first assignment of error, the defendant asserts that his convictions for both distribution of cocaine within one thousand feet of school property and attempted introduction of cocaine into a parish jail violated his constitutionally-protected right against double jeopardy. In his second and third assignments of error, the defendant contends that he was denied effective assistance of counsel due to his trial counsel’s failure to object to the jury instructions concerning responsive verdicts to the charge of distribution of cocaine within one thousand feet of school property and to a verdict sheet which did not contain all of the responsive verdicts. We find merit in the second and third assignments of error and reverse the distribution conviction. That reversal renders the first assignment of error moot. Thus, we first address the second and third assignments.

Assignments of Error Numbers 2 and 3.

In instructing the jury with respect to the charge of distribution of cocaine within one thousand feet of school property, the trial court stated that the following verdicts could be considered:
(1) Guilty as charged; (2) guilty of knowingly or intentionally distributing a controlled dangerous substance, to-wit: cocaine, but without the school zone enhancement; (3) guilty of possession of a controlled dangerous substance with the intent to produce, manufacture, distribute or dispense; (4) guilty of attempted possession of a controlled dangerous substance with intent to produce, manufacture, distribute or dispense; (5) guilty of possession of controlled dangerous substance; (6) guilty of attempted possession of controlled dangerous substances; (7) not guilty.
The verdict sheet given to the jury provided the following possible verdicts:
|7Guilty
Guilty of knowingly or intentionally distributing a controlled dangerous substance, classified in Schedule II, to-wit: Cocaine, but without the “School Zone” enhancement
Guilty of possession of a controlled dangerous substance with [sic] to produce, manufacture, distribute, or dispense
Guilty of attempted possession of a controlled dangerous substance with intent to produce, manufacture, distribute or dispense
Guilty of possession of controlled dangerous substances
Guilty of attempted possession of controlled dangerous substances
Not guilty
Neither of the two “distribution” verdict choices were followed by possible “attempt” verdict choices.
Responsive verdicts specific to certain charges are found in La.Code Crim.P. art. 814. All other responsive verdicts are governed by La.Code Crim.P. art. 815, which provides:
*836 In all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
(8) Not Guilty.
While a violation of La.R.S. 40:981.3(A)(1) is not provided for in La.Code Crim.P. art. 814, that article does provide responsive verdicts for a violation of La.R.S. 40:964(A)(4). Those responsive verdicts are as follows:
Guilty.
Guilty of attempted production, manufacture, distribution or dispensation of controlled dangerous substances.
Guilty of possession of controlled dangerous substances.
Guilty of attempted possession of controlled dangerous substances.
Not guilty.
^La.Code Crim.P. art. 814(A)(48).
We find that the appropriate potential verdicts available to the jury as to the violation of La.R.S. 40:981.3(A)(1) should have been as follows:
Guilty.
Guilty of attempted distribution of cocaine within one thousand feet of property used for school purposes.
Guilty of distribution of cocaine.
Guilty of attempted distribution of cocaine.
Guilty of possession of cocaine.
Guilty of attempted possession of cocaine. Not guilty.
In his brief, the defendant concedes that trial counsel failed to object to the erroneous jury instructions and verdict sheet reflecting those instructions. Pursuant to La.Code Crim.P. art. 801, an error as to jury instructions is waived unless an objection is made “before the jury retires or within such time as the court may reasonably cure the alleged error.” See also La.Code Crim.P. art. 841(A). The defendant attempts to avoid application of this procedural mandate by asserting that he was denied effective assistance of counsel based on trial counsel’s failure to raise an objection as to the erroneous instructions.
A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief. State v. Burkhalter, 428 So.2d 449 (La.1983). This enables the trial court to order a full evidentiary hearing on the matter. State v. Seiss, 428 So.2d 444 (La.1983). However, if the record contains evidence sufficient to decide the issue and the issue is raised on appeal by an assignment of error, the issue should be considered. Id. We find that the record does contain sufficient evidence to dispose of the issue in this appeal.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment to the United States ^Constitution. In order to prove that counsel was ineffective, the defendant must meet the two-prong test enunciated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant is required to show that counsel’s performance was deficient. Id. Second, the defendant is required to show that this deficiency prejudiced the defense. Id.; see also State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). In this case, the defendant’s counsel’s performance was deficient. The question is whether his failure to object prejudiced the defendant.
In State v. Busby, 94-1354 (La.App. 3 Cir. 4/5/95); 653 So.2d 140, unit denied, 95-1157 (La.9/29/95); 660 So.2d 854, the defendant claimed, on appeal, that he had received ineffective assistance of counsel based on his trial counsel’s failure to object to improper responsive verdicts for the charge of molestation of a juvenile. In analyzing the issue, this court focused on the prejudice caused by the erroneous jury instructions. In determining whether the failure to include or exclude responsive verdicts amounted to reversible error, this appellate court had to determine whether there was a reasonable probability that, had the jury been given the correct responsive verdicts, the ultimate ver- *837 diet would have been different. This court concluded that the defendant had not been denied effective assistance of counsel because strong evidence of his guilt existed and a unanimous verdict on the charged offense had been returned. This court stated:
The jury had an opportunity to reach a compromise verdict by returning a verdict of guilty of attempt. Instead, it reached a unanimous guilty verdict on the original charge, showing no hesitancy or confusion, nor a desire for lenity in its verdict. The defendant has thus failed to show that any prejudice resulted....
Id. at 148.
In State v. Leon, 623 So.2d 1368 (La.App. 4 Cir.1993), the fourth circuit [ ^reversed a defendant’s conviction of possession of cocaine with intent to distribute, holding that the defendant had received ineffective assistance of counsel. Trial counsel failed to object when the word “attempted” was inadvertently omitted from the first responsive verdict on the verdict sheet, and the jury was in effect given two verdicts of guilty as charged. The court reasoned as follows:
[T]he essential elements of possession of a controlled dangerous substance with intent to distribute would also support a verdict of attempted possession of a controlled dangerous substance with intent to distribute. Additionally, the incorrect responsive verdict given to the jury was the first responsive verdict to the crime charged. Therefore, because the elements of the crime charged and incorrectly stated responsive verdict were so intertwined and the responsive verdict was the next applicable verdict, there is a reasonable probability that, had the jury been given the correct responsive verdict that there may have been a different outcome.
Id. at 1371.
In a per curiam opinion, the Louisiana Supreme Court reversed the fourth circuit. See State v. Leon, 93-2511 (La.6/3/94); 638 So.2d 220. Since a complete transcript of the jury instructions was not included in the appellate record, the supreme court noted that the inadvertent error in the verdict sheet did not justify the conclusion that the trial court had not given the jury the correct responsive verdicts in its oral instructions. However, the court went further and stated:
Even assuming that the trial court made the same mistake in its general charge, the form provided jurors with several alternatives to a verdict of guilty as charged if they had been so inclined. Those alternatives included simple possession and attempted simple possession of cocaine. The jurors rejected those alternatives when they returned their verdict of guilty as charged and, given the underlying credibility choices that verdict reflected, the evidence at trial fully supported their determination. Under these circumstances, speculation that jurors might have returned the second responsive verdict provided by law if it had been listed correctly on the verdict form does not amount to a showing that the mistake rendered the proceedings fundamentally unfair or the result unreliable.
Id. at 222.
| nTuming to the case before us, the primary focus of the analysis of the issue presented involves an inquiry into prejudice. That is to say, does the failure to instruct the jury as to the proper responsive verdicts and does the failure to list the proper responsive verdicts on the verdict sheet amount to a showing that these failures rendered the proceedings and the final result fundamentally unfair and unreliable.
During jury deliberations, the jury returned to the courtroom to ask the trial court for the definition of “attempt.” After being instructed, the jury retired but returned again for further instructions. At that time, the following exchange took place between the foreman of the jury and the trial court:
THE COURT:
... I understand from the bailiff that you’re having some problems with the verdict sheet. I guess the first verdict sheet, that is, dealing with the distribution of a controlled dangerous substance. Is that correct?
THE FOREMAN:
Yes.
THE COURT:
*838 All right. Let me go over it. The first — The first part is if you find that the defendant is guilty of distributing cocaine within a thousand feet of property used for school purposes — if you find him guilty of that, you check that part. The next one is, you find him guilty of distributing a controlled dangerous substance, cocaine, but not in the school zone, then you would check that one. All right. If you find neither one of these applies, you could find him guilty of possession of cocaine with the intent to distribute the cocaine. In other words, he hadn’t done it, but he had possession of cocaine with the intent to distribute. The next one, which is — Each one gets a little less serious. The next one is guilty of attempted possession of cocaine. And the next one of guilty of possession of cocaine and the next one after that is guilty of attempted possession. Does that help you any or have I—
THE FOREMAN:
Your Honor, we take one vote then? There’s only one item to be voted on?
| laTHE COURT:
Right. For each — You have three sheets. One vote, on each sheet. In other words, you only have three separate charges. What may be confusing you is that if he’s not guilty of the more serious charge, he could be guilty of a lesser responsive charge. But you only decide which one applies, either guilty or not guilty of that specific — Does the attorney wish to approach the bench and discuss the matter any further or any additional explanation that I could give to them? (Discussion had at the bench was off the record.) Let me go over it again. You have three separate charges. Let’s take the ones that are maybe a little easier. One of them is the conspiracy, whether or not he conspired. That one is you either find him guilty or not guilty. And if ten of you agree one way, then you check it and sign it on the back and put what you found. The other charge is whether or not Issac Cole attempted — did unlawfully attempt to introduce rock cocaine into the premises of the Allen Parish Jail. On that one, you can either vote guilty or not guilty or you can vote guilty of attempted possession of controlled dangerous substance. Okay. Those are the two. You can find the defendant either guilty or not guilty of each separate charge. Do you understand that? Now getting back to the first charge, that is the distribution within the school zone, you should decide — Of course you can find him either guilty of any of these or you can find him not guilty of any of the responsive verdicts. You have the main charge and the responsive verdicts are lesser included charges. I would say vote, decide. If you can agree on which one of these applies, which one you feel that he’s guilty of. And if you don’t feel that he’s guilty of any of them, vote not guilty.
THE FOREMAN:
Your Honor, could you explain the clause there — the enhancement, the school clause?
THE COURT:
Okay. The law provides that if yoh distribute cocaine or any other controlled dangerous substance within a thousand feet of property used for school purposes, then you are — you can be found guilty of this charge, which carries a heavy penalty. I know that you heard it during the trial. You can also — If you wish, you can find him guilty of distributing a controlled dangerous substance and leave out the school zone enhancement. That’s up to you. That’s a lesser charge. Does that explain it to you? All right. I hope that I’ve helped you.
As the excerpt reveals, the jury did have some problems with the jury instructions. As the state points out in its memorandum, the basis for the jury’s request for the definition of “attempt” could have been in connection with the charge of | ^attempted introduction of contraband into a parish prison, for which the defendant was also found guilty as charged. However, the verdict on the charge of distribution of cocaine within a thousand feet of a school zone was not unanimous; it was ten to two. Moreover, the charged offense was the only verdict given to the jury which contained the school-zone provision. The jury specifically questioned the trial court about the school zone enhance *839 ment clause, and it is obvious that it had difficulty in that regard.
While we can only speculate about the reasons for the jury’s verdict, the facts before us cause us to conclude that the failure of the defendant’s counsel to object to the trial court’s failure to include the omitted responsive verdicts amounts to ineffective assistance of counsel. Unlike in Busby, 653 So.2d 140, the verdict was not unanimous, there was apparent confusion on the part of the jury, and a return of not guilty on one of the charges indicates concern on the part of the jury for all of the facts presented. Only Mack Slate testified that the defendant was at the scene of the crime, and he testified that the defendant’s attempt to throw the cocaine out of the car window was unsuccessful. In fact, it was Slate who actually completed the crime by tossing the cocaine from the ear. The jury was presented with the testimony of alibi witnesses to offset the evidence that he committed the offense. We find, as mandated by the supreme court in Leon, 638 So.2d 220, 222, “that the mistake rendered the proceedings fundamentally unfair [and] the result unreliable.” Thus, we reverse the defendant’s conviction of distribution of cocaine within one thousand feet of property used for school purposes.

Assignment of Error Number 1.

In his first assignment of error, the defendant asserts that his convictions for both distribution of cocaine within one thousand feet of school property and attempted introduction of cocaine into a parish jail violated his constitutionally-protected right 114against double jeopardy. We note that the reversal of the defendant’s conviction for distribution of cocaine within one thousand feet of property used for school purposes renders this assignment moot. However, for the purpose of giving guidance to the trial court in the event the state attempts to prosecute anew for the distribution charge, we address this issue.
La.Code Crim.P. art. 591 defines double jeopardy as follows:
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
As to the elements of a double jeopardy defense, La.Code Crim.P. art. 596 provides:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
The rule concerning a claim of double jeopardy arising from a single chain of events was set forth by this circuit in State v. Love, 602 So.2d 1014, 1020 (La.App. 3 Cir.1992):
Both the Fifth Amendment to the United States Constitution and Article 1, § 15 of the Louisiana Constitution guarantee that no. person shall be twice placed in jeopardy for the same offense. The purpose of these provisions is to protect a person from a second prosecution after he has already been acquitted or convicted of that offense and also to protect an accused against multiple punishment for the same conduct. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Vaughn, 431 So.2d 763 (La.1983).
Louisiana uses both the “Blockburger test” and the “same evidence test” in determining whether double jeopardy exists. La. C.Cr.P. art. 596; State v. Vaughn, supra, and c eases cited therein. The “Blockburger test” was set out by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), where the court | iSstated:
“... The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one; is whether each provision requires *840 proof of an additional fact which the other does not ...”
The “same evidence test” has been adopted by the Louisiana Supreme Court and was explained by the court in State v. Steele, 387 So.2d 1175 (La.1980), as follows:
“If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
The ‘same evidence test’ is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.” (Citation omitted). Id. 387 So.2d at 1177 (La. 1980).
Therefore, “double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct”. State v. Vaughn, supra, at page 767, and cases cited therein.
However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy. State v. Nichols, 337 So.2d 1074 (La.1976). Louisiana has not adopted a “same transaction” test which would prohibit, on double jeopardy grounds, prosecutions for different crimes committed dim-ing one sequential, continuing course of conduct. City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975).
In the case before us, the defendant was convicted of two offenses, both of which involved the same conduct on his part, the same locale, and the same cocaine. Other than the fact that one of the charged crimes constituted a completed offense and the other merely an attempt, the only distinguishing element of the two crimes is the prohibited location of the offenses. The convictions were for distribution of cocaine | ^within one thousand feet of school property, a violation of La.R.S. 40:967(A)(1) and La.R.S. 40:981.3(A)(1), and attempted introduction of contraband (i.e., the same cocaine) into or upon the premises of a parish jail, a violation of La.R.S. 14:402(E)(5). However, one act was committed in the same locale. The conduct, distribution of a controlled dangerous substance, occurred at a location that triggered two separate statutory provisions, one dealing with a parish jail and the other with school property. The state concedes in brief that the only difference in the proof of the two offenses is the location of the actual distribution. The question to be presented to the trial court in the event the state attempts to again prosecute the defendant on the distribution charge is whether this difference is sufficient to overcome the “same evidence” test as enunciated by the supreme court in State v. Steele, 387 So.2d 1175 (La. 1980).
Having vacated the conviction and sentence on the charge of distribution of cocaine within one thousand feet of property used for school purposes, the double jeopardy claim is moot and we will not address the issue further. Thus, we affirm the conviction and sentence for attempted introduction of contraband into and upon the premises of the Allen Parish Jail.

Assignments of Error Numbers 4, 5, and 6.

These assignments were not briefed by the defendant and are therefore considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4; State v. Morris, 614 So.2d 180 (La.App. 3 Cir.1993).

Assignment of Error Number 7.

The defendant merely identifies this assignment of error as “[a]ll errors patent on the face of the record.” Such an assignment of error is not necessary as La.Code Crim.P. art. 920 requires that, in addition to assigned errors, the court of appeal shall consider “[a]n error that is discoverable by a mere inspection of the pleadings and [ ^proceedings and without inspection of the evidence.” We find that the record contains one such error which must be addressed.
In imposing sentence, the trial court is required to give the defendant credit toward service of his sentence for time spent in *841 actual custody prior to the imposition of his sentence. La.Code Crim.P. art. 880. The record indicates that the trial court failed to do this; however, resentencing is not required. See State v. Moore, 93-1632 (La. App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858. We will remand this case to the district court for the commitment and minute entry to be amended to reflect that the defendant is given credit for the time that he has already served. See id.
DISPOSITION
For the foregoing reasons, we vacate the conviction and sentence on the charge of distribution of cocaine within one thousand feet of school property. We affirm the conviction and sentence on the charge of attempted introduction of contraband into the parish jail. We also direct the trial court to amend the commitment and minute entry to reflect that the defendant has been given credit for time served.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.