496 So.2d 1068 (1986)
STATE of Louisiana
v.
Raymond PAYTON.
No. KA-4740.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1986.
*1069 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Before GARRISON, LOBRANO and WARD, JJ.
GARRISON, Judge.
This is an appeal from an unanimous 12 man jury verdict finding the defendant, Raymond Payton, guilty of attempted armed robbery under R.S. 14:27 and R.S. 14:64 for which he was sentenced to 49½ years at hard labor. It is also an appeal from a 10 to 2 jury verdict finding the defendant guilty of attempted second degree murder under R.S. 14:27 and R.S. 14:30.1, for which he was sentenced to 50 years at hard labor. The two counts run consecutively not concurrently.
On appeal, defendant raises the following specifications of error:
1. The trial court erred in sustaining the State's objection to a question asking the victim if the accused exerted extra effort to shoot Mr. Collins in non-vital as opposed to vital areas;
2. Sufficiency of the evidence to support the conviction for attempted second degree murder;
3. The State violated the prohibition against double jeopardy by convicting the defendant of both attempted felony murder and the underlying felony;
4. The sentence imposed is excessive.
On June 5, 1984 at 2:00 a.m. Mr. and Mrs. Edward Collins ("Brian" & Margaret) and their 14 year old daughter, Wendy, and Mr. and Mrs. (Jenny) Kenneth Bono and their son, Steven, were registered guests at the Landmark Hotel on Bourbon Street. They had attended the 1984 World's Fair before returning to their hotel. The two couples then stood on a hotel balcony, watching pedestrian traffic on the street below. The balcony was a common one, open to anyone in the hotel and accessible by a common area hallway.
Mr. Collins decided to return to his room. He was opening the door when the defendant approached him, asking for money. Mr. Collins did not hear or understand Payton and told him, "I didn't hear you, what did you say?" "Your money goddammit, I want your money." "Well you must be kidding," Collins replied. At that point, Collins saw Payton's gun for the first time. Collins froze; Payton aimed the gun at *1070 Collins stomach/navel. Collins turned and Payton fired. The bullet struck Collins in the hip, entered his body and came out in the groin. Kenneth Bono heard the shot and exited his room in time to see the defendant running in the hall. Mrs. Collins observed the entire event.
Hotel security heard the gunshot and immediately sealed off the hotel, locking all doors. Security, along with some N.O.P.D. officers in the hotel began a floor by floor search. Payton was discovered hiding in a doorway on the fourth floor. He was nervous, sweating, and shirtless. His shirt and the gun were discovered directly above Payton on the fifth floor. Payton was brought downstairs where he was identified by Mr. Bono, Mrs. Collins, and the victim.
Payton testified that he was in the hotel to deliver cocaine to a man named David on the fourth floor. He could not remember the room number and did not know David's last name. Payton testified that he was asked to deliver the cocaine by a man named Carlos. He did not know Carlos' last name or place of residence.
He testified that he was in David's room consumating the deal, when he heard the siren begin. Curious about the siren, he stepped outside of the room where he was promptly spotted and arrested. He had previously worked at the hotel. He had been to the hotel at least a month before the incident in order to visit a friend who worked in the hotel's housekeeping section. He was well aware of a system of valet doors and inner "hidden" stairways used exclusively by hotel personnel.
Turning to defendant's first specification of error, he argues that the trial court judge erred in upholding the State's objection to defense counsel's question as to whether Payton took "extra care" to aim at Collins' non-vital as opposed to vital areas. Defense counsel argues that the question was admissible as relevant on the element of specific intent. The trial court did not err. Defense's question required that the victim, a fact witness only, make a conclusion as to the state of mind of the defendant, thus asking for opinion testimony in violation of R.S. 15:463:
"... the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
Turning to the defendant's second specification of error, he argues that there was insufficient evidence to convict. This argument is without merit. The standard to be applied on appeal in viewing the facts in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The essential elements of attempted murder are:
(1.) the specific intent to kill and,
(2.) an overt act tending toward the accomplishment of that goal.
State v. Jarman, 445 So.2d 1184, 1189 (La., 1984).
In the instant case, defendant fired a gun into Mr. Collins' "gut" area. It is apparent that he made an overt act in furtherance of the goal of killing Mr. Collins and that he had specific intent to kill Mr. Collins. Accordingly, there existed sufficient evidence to convict.
Turning to defendant's fourth specification of error, he argues that the sentence is excessive because the two sentences run consecutively and that the trial court judge failed to consider mitigating and/or aggravating circumstances in sentencing as required by C.C.P. Art. 894.1. The entire sentencing transcript is as follows:
"Let the record reflect the defendant was found guilty as charged by a jury as to Count 1 of Armed Robbery, and Count 2, Second Degree Murder. The Court sentences the defendant as to Count 1 for 49½ years in the Department of Corrections at hard labor in the State Penitentiary. As to Count 2, the Court sentences the defendant to serve 50 years in the State Penitentiary with credit for time from June 5, 1984, and the Court *1071 orders each sentence to run non-concurrent and/or consecutive to each other. Factual basis for sentencing under 894.1, the Court is imposing the maximum sentence, each to run consecutive to each other. The factual situation in this case reveals that the victim was attempting to enter his room at the Landmark Hotel on Bourbon Street in New Orleans, a visitor from out of town, and the defendant attempted to rob him and shot him during the perpetration of the robbery, the severity of which the defendant was convicted and sentenced in this case. The oral Motion for Appeal by counsel is noted and is to be substituted in writing and fingerprints of the defendant have been affixed to the front of the Bill of Information."
As is evident by the transcript, the sentencing judge stated on the record his conclusion on the applicability of C.Cr.P. Art. 894.1. In order to comply with the requirements of that article, the more erudite judges below already verbally read into the record each subsection of C.Cr.P. Art. 894.1 and subsection by subsection state if it applies to the case before him and why based upon the specific facts of the case then before him. We have hesitated to make this method a requirement solely because it would result in overturning otherwise totally valid convictions.
The factors in C.Cr.P. Art. 894.1(B), however, are not controlling over the discretion of the trial court judge. Indeed, it should be noted that:
"Wide discretion is given the trial judge in the imposition of sentence within the applicable statutory limits; in the absence of manifest abuse, his sentence should not be set aside as excessive. State v. Feeback, 414 So.2d 1229 (La. 1982); State v. Sepulvado, 367 So.2d 762 (La.1979)."
State v. Jackson, 432 So.2d 360, 362 (App. 1st, 1983).
In order for the sentence to be manifestly abusive, it must be:
"Barbarous, extraordinary or grossly disproportionate to the offense. In short, the constitutional prohibition is directed to punishments that shock the conscience of civilized men. State v. Crook, 253 La. 961, 221 So.2d 473, 476 (1969)."
Jackson, above, at 361.
The question then becomes "Is it barbarous, extraordinary or grossly excessive to order 49½ and 50 year sentences where the defendant at a close range of three feet fired a gun aimed at the victims gut/stomach area, where the bullet entered the hip and exited the groin?"
In State v. Nealey, 450 So.2d 634 (La., 1984) the Supreme Court upheld concurrent 55 year and 45 years sentences for armed robbery and attempted first degree murder where the 25 year old defendant was a first offender with a long history of mental disease. In State v. Thompson, 429 So.2d 862, the Supreme Court upheld consecutive 45 and 30 year sentences for attempted first degree murder and armed robbery where the second offender defendant beat and left maimed the elderly victim.
Thus it cannot be concluded that the sentences imposed are "barbarous, extraordinary, or grossly excessive" in the instant case. Having thus concluded, it cannot be said that the trial court judge manifestly abused his discretion in the penalties ordered.
Turning to defendant's third specification of error, he argues that conviction of both felony murder and the underlying felony constitutes double jeopardy under C.Cr.P. Art. 596. That article provides as follows:
"Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
The plea of double jeopardy is required to be raised by a written motion setting *1072 forth the prior court proceeding docket information and the facts constituting double jeopardy. C.Cr.P. Art. 593. C.Cr.P. Art. 594 refers to the fact that the plea of double jeopardy "... shall be tried by the court alone. If raised during the trial, a hearing thereon may be deferred until the end of the trial." As cited above, C.Cr.P. Art. 596 speaks in terms of the "second trial." Finally, the comments under C.Cr.P. Art. 595 state:
"(a) The jurisprudence of Louisiana, as well as that of most other jurisdictions, is evidence of the difficulty which confronts a court when a plea of double jeopardy is made. The two critical questions which must be answered to dispose of most double jeopardy pleas are: (1) was the defendant in jeopardy in the first trial, i.e., danger, and (2) is the charge on the second trial the same as that of the first?"
In the instant case there can be no double jeopardy under C.Cr.P. Art. 596(1) because there were not two trials.
Turning to a discussion of C.Cr.P. Art. 596(2), it is noted that R.S. 14:30.1 provides as follows:
"Second degree murder is the killing of a human being.

(1) When the offender has a specific intent to kill or to inflict bodily harm; or

(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." (Emphasis added).
Thus, someone can be convicted of second degree murder in two wholly separate and distinct ways. The first way requires two elements: (1) killing a human and (2) specific intent. The second way one can be convicted of second degree murder likewise requires two elements: (1) killing a human and (2) while committing a felony, hence "felony murder."
The two distinct and separate definitions result from the disjunctive or the use of the word "or" at the end of subsection (1).
In the instant case we do not know if the jury found Payton guilty under R.S. 14:30.1(1) "specific intent" or under R.S. 14:30.1(2) "felony murder". Based on a reading of the record and an examination of the evidence presented therein, the jury could have easily found him guilty under either provision or both.
If the jury found Payton guilty under R.S. 14:30.1(1) "specific intent", then the armed robbery conviction under R.S. 14:67 would not constitute double jeopardy as that felony is not an element of R.S. 14:30.1(1), hence it is not part of "a continuous offense" under C.Cr.P. Art. 596(2).
In the alternative, however, if the jury found Payton guilty under R.S. 14:30.1(2) "felony murder", then the armed robbery conviction would constitute double jeopardy as the felony is an element of "felony murder", hence part of a continuous offense under C.Cr.P. Art. 596(2).
We do not know from the record before us, however, which way the jury went, if not both ways.
The defendant cites the case of State v. Rogers, 462 So.2d 684 (App. 4th, 1984) writ denied 478 So.2d 899 (La., 1985). In Rogers, Judge Ward, as organ of the court, stated:
"Louisiana Code of Criminal Procedure Article 596 defines double jeopardy in terms of a second prosecution for the same offense, but its provisions also protect an accused from multiple punishments for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La. 1983). When the same conduct is a violation of two criminal statutes, there is an accepted test to determine whether conviction and punishment for both places the accused in double jeopardy: Does conviction for each offense require proof *1073 of an additional element which the other does not? State v. Vaughn. This test is to be applied to the evidence required to convict, not to all evidence presented at trial. State v. Steele, 387 So.2d 1175 (La.1980).
By applying this test to the elements of Rogers' crimes, it is clear that aggravated arson does not require proof of an additional element beyond those of attempted first degree murder when that charge is based on the underlying crime of aggravated arson. The elements of first degree murder applied in this case are: 1) the killing of a human being, 2) when the offender has specific intent to kill or to inflict great bodily harm, and 3) is engaged in the perpetration of aggravated arson. La.R.S. 14:30(1). Attempted first degree murder occurs when any person, while having a specific intent to kill and while committing aggravated arson, does any act which tends directly toward the killing. La.R.S. 14:27. The definition of attempted first degree murder includes aggravated arson, and when Rogers was convicted of attempted first degree murder, the jury of necessity found that every element of aggravated arson had been proved beyond a reasonable doubt. Hence, Rogers was twice placed in jeopardy for the arson: once on the arson charge itself and again as an element of the attempted murder.
This case apparently is the first in which an appellate court has been faced with the double jeopardy ramifications of the 1979 first degree felony murder statute. However, the Supreme Court considered a similar problem in a case under the old degree murder statute. In State ex rel. Wikberg v. Henderson, 292 So.2d 505 at 511 (La.1974), the Court noted that one who robs and then kills his victim could not be prosecuted for both crimes unless the murder was prosecuted under the (then-existing) intentional murder provision, rather than as a felony murder. The State had an alternative of prosecuting either felony murder or the underlying felony. Applying this rationale to the present statute, we hold that in this case, the State cannot convict and punish for both an attempted first degree felony murder and the underlying felony of aggravated arson.
We do not decide nor do we now hold, however, that after acquittal, as opposed to conviction, of first degree murder or attempted first degree murder, an accused would be subjected to double jeopardy by prosecution for the underlying felony.
We vacate Joseph Rogers' conviction and sentence for aggravated arson, the less severely punishable offense, in accord with State v. Doughty, 379 So.2d 1088 at 1091 (La.1980).
(At 685-686).
See also: State v. Chaisson, 425 So.2d 745 (La., 1983).
Rogers is not controlling, however. In Rogers, the case was one of first degree murder. The first degree murder statute is written in the conjunctive "and" instead of the disjunctive "or". Accordingly, all three elements are required under R.S. 14:30:
"First degree murder is the killing of a human being:
(1) When he offender has specific intent to kill or inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simply robbery;"
Thus the court in Rogers correctly concluded that since the felony was an element of first degree murder, Rogers had been placed in jeopardy twice for the same felony (arson): "once on the arson charge itself and again as an element of the attempted murder." As previously discussed, however, the felony is not necessarily an element of second degree murder, such that it would be possible for an individual to be convicted of both second degree murder and one of the enumerated felonies without being placed in double jeopardy under the "elements" test.
*1074 Because, however, we do not know if Payton's second degree murder conviction is under R.S. 14:30.1(1) or R.S. 14:30.1(2), any question on appeal should be resolved in favor of the prosecution. We find that Raymond Payton was convicted under R.S. 14:30.1(1), the specific intent alternative. Accordingly, since Payton was not convicted under "felony murder", R.S. 14:30.1(2), his armed robbery conviction is not an element of the crime for which he was convicted, therefore no double jeopardy exists.
AFFIRMED.
LOBRANO, J., dissents with reasons.
LOBRANO, Judge, dissenting.
I respectfully dissent from the reversal of the attempted armed robbery conviction. Since we are not able to ascertain from the record whether defendant was convicted of attempted second degree murder under R.S. 14:30.1(1) or R.S. 14:30.1(2), I am of the opinion that that conviction ought to be reversed. Assuming defendant was convicted under R.S. 14:30.1(2), then the evidence necessary to convict would also include the evidence needed for attempted armed robbery. By reversing the attempted armed robbery conviction, the majority must assume that defendant was convicted under R.S. 14:30.1(2).
Therefore, I would reverse the attempted second degree murder conviction and affirm the attempted armed robbery conviction. By doing so, the State would not be precluded on double jeopardy grounds from prosecuting defendant under La.R.S. 14:30.1(1).