JjKOSTELKA, J.
William Lamar Gay, Jr. (“Gay”) was charged by bill of indictment with the crime of attempted first degree murder while engaged in the perpetration of an armed robbery[1] and by bill of information with armed robbery. After a consolidated trial on the charges, a jury convicted Gay of attempted second degree murder, La. R.S. 14:30.1, 14:27 and armed robbery, La. R.S. 14:64. The trial court sentenced Gay to consecutive hard labor sentences of ninety-nine years for the armed robbery and fifty years for the attempted murder, each to be served without benefit of parole, probation or suspension of sentence. After the denial of a timely motion for reconsideration of sentence, Gay appeals the convictions and sentences. We affirm.
Facts
At approximately 2:00 p.m. on the afternoon of February 4, 2000, Connie Hill (“Hill”) was alone in her Springhill, Louisiana home when the back doorbell rang. Thinking it might be her husband returning home early from a meeting, Hill, a sixty-seven year-old retiree, opened the door to find Gay standing outside. She recognized him as one of a group of men that she and her husband, Johnny Hill (“Johnny”), occasionally paid to do yard work and odd jobs. It was not unusual for Gay to come to the Hill home to solicit work. Normally, when Johnny was not at home, Hill would inform Gay of that fact and he would leave. On the day in question, Hill informed Gay that Johnny was not at home. She then heard him say something that |2she did not understand, so she opened the door a second time. Gay asked her when Johnny would be back and she told him she was not sure. Remembering that Gay lived some distance away, Hill suggested that he later call her husband. Hill left the doorway to look for something with which to write her phone number for Gay. With her back to Gay, Hill walked into the next room. When she turned around, Gay was standing inside her home and pointing a black gun at her. Gay told Hill to “come here.” She ran at him “hollering” and asked him why he was doing this to her. Gay became nervous and agitáted and told Hill to shut up or he would shoot her. Gay then told Hill he wanted money and Hill offered him the $100 she had in her purse in the bedroom. Gay then told Hill to get some “silver” duct tape. He accompanied Hill to the storage room in the carport, but Hill could not find any tape. Gay ordered Hill to get an extension cord he saw on the carport floor. Hill attempted to walk away, but Gay threatened to shoot Hill if she did not come back. She decided not to try to run, went back into the house with Gay, and handed him the hundred-dollar bill from her purse. Gay demanded more money, but Hill told him that the hundred-dollar bill was all she had in the house and explained to him that she and her husband kept their money in a bank. Gay told Hill to call the bank and handed Hill the phone *360 and they made the phone call. However, when a recording answered, they decided that the bank must be closed. Gay then tied Hill’s hands tightly in front of her using the extension cord and asked for the keys to the Hill'd 1977 Lincoln automobile located in the carport. Hill told him where the keys were kept. Gay retrieved the keys, took them to Hill and asked which key fit the car. When Hill showed him Lthe key, Gay noticed that Hill had loosened the cord from around her hands and arms. Hill explained that the cord cut her skin and hurt her hands and arms, and that she could not stand it. , Gay did not retie Hill but told her again that he wanted more money. Gay mentioned a bank branch in Springhill and asked Hill if she thought that bank would cash a check. Hill said she did not know but offered to try. Gay asked Hill how much money she would give him if he would “let; her go.” Hill said, “Five thousand dollars,” got a checkbook out of Ler purse, and began to write out the check. Gay indicated that they would go to the bank.
As she walked in front of Gay, Hill explained that she did not know if the bank would cash a check, but told Gay, ‘We’ll see.” Gay told her, “I’ll tell you what, you don’t worry about it.” Then Hill perceived Gay was about to shoot her. Gay then shot Hill from behind, striking her shoulder and neck. Stunned, Hill immediately fell to the floor and pretended to be dead. A few seconds later, Hill heard the gun click, but not fire. Gay left Hill lying in the hallway and walked past her.
From the floor, Hill saw Gay walk around in the front part of her house two or three times. Then Gay went outside and Hill heard him try to start her car. When Hill was sure of Gay’s location, she managed to get up and escape her house through a sliding door into her backyard. She hid behind a metal storage building where she could not be seen by Gay and attempted to push through her fence. On her third push, the fence broke. Hill went through the fence, injuring her legs, walked into her neighbors’ back door and told them she had been shot. She could still hear Gay | ¿attempting to start her car, so she asked her neighbors to lock the door and call 911.
When the police arrived at Hill’s neighbors’ house, Hill mistakenly gave the name of the perpetrator as “Washington.” Hill was taken to a local hospital by ambulance, and her husband, Johnny, was notified. In the emergency room, Hill realized that she had mistakenly given the police the name Washington.”
Hill’s physical exam revealed that Gay’s bullet missed severing Hill’s carotid artery by only a millimeter, and her legs were badly damaged. After emergency surgery for her wounds, Hill suffered a severe heart attack that was caused by the stress of her ordeal. She was treated in the critical care unit of a Shreveport hospital and hospitalized for a considerable time.
On the day of the crime, Gay was located at a residence on Boucher Circle in Cullen, Louisiana, where he was hiding under a pile of clothes. According to police testimony, Gay subsequently confessed that he went to Springhill and shot the victim. Gay led police to the exact location of a gold bicycle that he allegedly rode to the crime scene and that was located approximately one block from his residence. On April 14, 2000, police recovered a 9 mm. spent shell casing from the Hill home. The blood-stained check written by Hill, and the electrical cord that was used to tie her hands, were also recovered from the scene.
DISCUSSION

Sufficiency of the Evidence

In his first assignment of error, Gay argues that the evidence was insuffi *361 cient to identify him as the perpetrator of the offenses.
15The record reflects that Gay failed to file a motion for post-verdict judgment of acquittal. Of course, a sufficiency of the evidence complaint is appropriately raised by such a motion. La.C.Cr.P. art. 821. Nevertheless, this court will consider sufficiency-of-the-evidence arguments raised by assignment of error. State v. Green, 28,994 (La.App.2d Cir.02/26/97), 691 So.2d 1273.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The criterion for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, initially enunciated in Jackson and now legislatively embodied within La. C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La. 1983).
An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct l6evidence is thus viewed, the facts established by the direct evidence and in-
ferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that a defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra.
In cases involving a defendant’s claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.02/21/97), 688 So.2d 520.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
In pertinent part, second degree murder is defined as the killing of a human -being when the offender has the specific intent to kill or to inflict Ugreat bodily harm or when the offender is engaged in the perpetration of an armed robbery, even though he has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1.
*362 An attempt to commit murder, whether first or second degree, requires that defendant possess the specific intent to Mil and commit an overt act tending toward the accomplishment of that goal. La. R.S. 14:27; La. R.S. 14:30; 14:30.1; State v. Jarman, 445 So.2d 1184 (La.1984); State v. Huizar, 414 So.2d 741 (La.1982); State v. Harris, 26,563 (La.App.2d Cir.09/21/94), 643 So.2d 779, writ denied, 94-2607 (La.02/17/95), 650 So.2d 251; State v. Owens, 606 So.2d 876 (La.App. 2d Cir.1992).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. Huizar, supra. Specific intent to Mil may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
The record before us clearly supports the convictions. At trial, Hill positively identified Gay as the person who robbed her of $100 at gunpoint and proceeded to shoot her and thereafter continue to unsuccessfully pull the trigger. She stated that she was “one hundred percent positive” of his identity and that she would never forget his face. Hill’s identification of Gay was substantiated by her previous encounters with him due to his prior work at and visits to her home. She had personally paid Gay and given him cold drinks and snacks on occasions. Hill testified that she had a clear view of Gay’s face for a long time and from a short distance away.
IsHill’s statements were also bolstered by the remaining testimony and evidence. Gay’s mother testified that she saw a black gun in her living room just prior to the crime and that Gay rode his brother’s gold bicycle. She also admitted that Gay told her two different stories when questioned about the crime. Gay’s girlfriend also stated that she saw him pull a gun out from under a bed the night before the crime and heard him ask his brother to hold a package for him because he was “fixing to go to jail.” Gay’s sister stated that she heard Gay say on the morning of the crime that he was “going to Mil an old gray-haired bitch.” Additionally, the state presented evidence of Gay’s voluntary confession that he went to Springhill and shot the victim. Finally, the evidence showing Gay’s concealment of himself under a pile of clothes as police attempted to arrest him is sufficient to indicate his consciousness of guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
In support of his claim of innocence, Gay and his brother, Carlos, testified. Carlos indicated that he could only remember Gay worMng for the Hills on one occasion. Upon questioning by the state, Carlos was unable to remember giving a statement to the police immediately after the crime in which he stated he saw Gay riding a gold bicycle toward Springhill and carrying a 9-mm. handgun on the day the crimes were committed. Gay testified that he had only worked for the Hills on one occasion and denied shooting Hill. He claimed to have been watching his niece and nephew on the day of the shooting.
┴9The jury obviously rejected Gay’s claim that he was not the person who committed the crime. This court gives great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra. With the obvious inconsistencies in both Gay’s and his brother’s statements, we find this conclusion to be a reasonable one. Rather, the jury accepted Hill’s positive identification of Gay as the perpetrator of the offenses and probably attributed her initial misnaming of the defendant as an emotionally- *363 induced mistake. Such credibility determinations remain within the province of the jury. Certainly, if believed, Hill’s positive identification is alone more than adequate to support the jury verdicts for both armed robbery and attempted second degree murder. State v. Davis, 27,961 (La. App.2d Cir.04/08/96), 672 So.2d 428, writ denied, 97-0388 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990). Her testimony clearly indicated that Gay took $100 from her while he was armed with a gun. Moreover, his pointing a gun at her and firing the weapon is adequate to show that Gay possessed the specific intent to kill Hill. This evidence is more than adequate to negate any reasonable probability of misidentification. This claim has no merit.

Double Jeopardy

In his second assignment of error, Gay urges that he received multiple punishments for the same criminal conduct by being sentenced both for attempted second degree murder and armed robbery in violation of his constitutional guarantee against double jeopardy.
|inThe record shows that Gay failed to file a motion to quash the indictments. Although a claim of double jeopardy is usually raised in a pre-trial motion to quash, it can be raised at any time, but only once. La.C.Cr.P. art. 594; State v. Lefeure, 2000-1142 (La.App. 5th Cir.01/20/01), 778 So.2d 744, writ denied, 2001-1440 (La.09/21/01), 797 So.2d 669; State v. Freeman, 577 So.2d 216 (La.App. 1st Cir.1991), writ denied, 580 So.2d 668 (La.1991).
A person cannot twice be put in jeopardy for the same offense. U.S. Const. amend. V; La. Const. art. 1, § 15; La.C.Cr.P. art. 591. The Double Jeopardy Clause protects against multiple punishments for the same offense as well as a second prosecution for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Vaughn, 431 So.2d 763 (La.1983); State v. Coates, 27,287 (La.App.2d Cir.09/27/95), 661 So.2d 571, writ denied, 95-2613 (La.02/28/96), 668 So.2d 365.
In this case, the record undisput-ably reveals that the state charged and prosecuted Gay with the crimes of attempted first degree murder based upon the underlying offense of armed robbery and the separate armed robbery offense. Of course, first degree murder, La. R.S. 14:30A(1), requires proof of specific intent to kill while the offender is engaged in the perpetration of an enumerated felony, here armed robbery.[2] Nevertheless, the jury returned l^guilty verdicts of attempted second degree murder and armed robbery. *364 In these circumstances, we are required to direct our double jeopardy analysis upon the offenses of conviction. The relevant inquiry is whether Gay received multiple punishments for the same criminal conduct. North Carolina, supra; Vaughn, supra. We conclude that he has not.
The Double Jeopardy Clause does not prohibit prosecution for specific intent murder and armed robbery. Taylor v. Whitley, 933 F.2d 325 (5th Cir.1991), cert. denied, 503 U.S. 988, 112 S.Ct. 1678, 118 L.Ed.2d 395 (1992). See also, Coates, supra. Of course, second degree murder can be either a specific intent crime or a felony-murder crime under La. R.S. 14:30.1. Importantly, however, there exists no such crime as attempted second degree felony murder because that crime requires proof of specific intent to kill; this is inconsistent with the felony murder theory of an unintentional killing. State v. Wills, 32,073 (La.App.2d Cir.06/16/99), 740 So.2d 741; State v. Allen, 571 So.2d 758 (La.App. 2d Cir.1990); State v. Guccione, 96-1049 (La.App. 5th Cir.04/29/97), 694 So.2d 1060, writ denied, 1997-2151 (La.03/13/98), 712 So.2d 869. Thus, the crime of attempted second degree murder cannot be based upon an underlying felony. Allen, supra; Guccione, supra.
For these reasons, the courts of this state and other jurisdictions have consistently held that simultaneous convictions for attempted second degree | ^murder and armed robbery, arising from the same criminal conduct, do not violate double jeopardy. Allen, supra; DeSalvo v. Cain, 2002 WL 1585564 (E.D.La.2002); Guccione, supra; State v. Salone, 93-1635 (La.App. 4th Cir.12/28/94), 648 So.2d 494; State v. Banks, 496 So.2d 1099 (La.App. 4th Cir.1986); State v. Payton, 496 So.2d 1068 (La.App. 4th Cir.1986), Writ denied, 541 So.2d 862 (La.1989).
In finding no double jeopardy violation, the court in Banks, supra, explained that “[t]he fact that the defendant was convicted of attempted second degree murder, which requires a showing of specific intent to kill, leaves no doubt that he was convicted under subsection (1) of [La.]R.S. 14:30.1.” The court further concluded that “the evidence required to support a conviction of attempted second degree murder under subsection (1) of R.S. 14:30.1 did not include proof of armed robbery. Likewise the conviction of armed robbery did not require proof of an intent to kill.” See also, DeSalvo, supra, citing this language in Banks with approval and likewise upholding simultaneous convictions of attempted second degree murder and armed robbery.
While we find this jurisprudence ultimately dispositive of the present case, two additional points of discussion are necessary. We recognize that a distinguishing factor exists between this case and the cited jurisprudence, because here, unlike each of the cited cases, the state initially charged and prosecuted Gay for attempted first degree murder based upon the underlying offense of armed robbery. This distinction, however, is unpersuasive in our ultimate determination, because the courts have held that while the Double Jeopardy Clause may protect a defendant against 113cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting a defendant for both a greater or lesser included offense in a single prosecution, even though the court may not enter separate convictions or impose cumulative punishments for both offenses unless the legislature has authorized such punishment. Ohio v. Johnson, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); U.S. v. Kaiser, 893 F.2d 1300 (11th Cir.1990); State v. Addison, 94-1423 (La.App. 4th Cir.11/13/96), 684 So.2d 477 (holding that *365 double jeopardy applies when one is tried twice for the same offense, not when two offenses are tried together); People v. Henry, 329 Ill.App.3d 397, 769 N.E.2d 34, 263 Ill.Dec. 832 (5 Dist. 03/14/01), appeal allowed, 199 Ill.2d 566, 775 N.E.2d 6, 266 Ill.Dec. 444 (05/30/02) (holding that there is no prohibition against simultaneous prosecutions for more than one crime carved from a single physical act although the sentences must be vacated when convictions for the two offenses occur); Com. v. Arriaga, 44 Mass.App.Ct. 382, 691 N.E.2d 585 (03/10/98), review denied, 427 Mass. 1105, 695 N.E.2d 668 (04/28/98) and cases discussed therein. See Also, United States v. Gaddis, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976); Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Accordingly, these facts fail to give merit to Gay’s double jeopardy claim.
Nor do the unique facts of this ease, i.e., the state’s prosecution of attempted first degree felony-murder based upon the armed robbery, necessarily lead to the conclusion that the jury erroneously based its attempted second degree murder conviction upon the underlying armed 114robbery. As noted above, the courts have declined to leave room for such a conclusion based upon the principle that an attempted second degree felony-murder conviction is a legal impossibility. Moreover, the mere possibility of such an error does not mandate a finding of double jeopardy. Even so, Gay’s conviction can be upheld on appeal if there is sufficient evidence based on any of the alternative theories with which the jury was charged. State v. Vergo, 594 So.2d 1360 (La.App. 2d Cir.1992), writ denied, 598 So.2d 373 (La. 1992); State v. Brown, 96-1002 (La.App. 5th Cir.04/09/97), 694 So.2d 435. See also, Guccione, supra. A jury is not constitutionally required to agree on a single theory to convict a defendant where it is instructed as to alternate theories. Vergo, supra; Brown, supra.
The record in this case is clear that the trial court twice instructed the jury on the specific intent element of second degree murder in addition to the. non-intent felony-murder portion of La. R.S. 14:30.1. Additionally, evidence of specific intent was presented by the state in order to prove first degree murder. Obviously, the intent of the jury in rendering the verdict cannot be discerned from the record before us because the jury was not polled concerning this. Nevertheless, the evidence showing Gay’s pre-shooting threats and deliberate and intentional firing of a gun which resulted in wounds to the victim are facts which plainly indicate that Gay possessed the requisite specific intent to kill Hill. Accordingly, it is reasonable to conclude that the jury convicted ■ Gay of attempted second degree murder based upon a determination that he possessed the specific intent to kill Hill under the provisions • of La. R.S. 14:30.1(A)(1). Because such a determination required no proof of armed robbery, and Gay’s armed |1srobbery conviction required no proof of specific intent to kill, we find that these convictions fail to violate the Double Jeopardy Clause.
EXCESSIVE SENTENCE
In his final assignment of error; Gay argues that his maximum, consecutive sentences were constitutionally excessive for his young age and that sufficient rehabilitation and punishment can be accomplished with the imposition of reduced sentences.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as *366 the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.06/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State■ v. Landos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
| mThere is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La. App.2d Cir.03/01/00), 754 So.2d 392, writ denied, 2000-1467 (La.02/02/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.02/26/97), 690 So.2d 864, writ denied, 97-0705 (La.09/26/97), 701 So.2d 979.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. Square, 433 So.2d 104 (La.1983).
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App .2d Cir.08/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or |17all be served consecutively. La.C.Cr.P. art. 883. It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App.2d Cir.11/01/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App.2d Cir.04/05/00), 756 So.2d 1218, writ denied, 787 So.2d 1010 (La.03/23/01).
Among the factors to be considered are the defendant’s criminal history, State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848,101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir. 1986), writ denied, 496 So.2d 355 (La. 1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir. 1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ denied, 435 So.2d 433 (La. 1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); de *367 fendant’s apparent disregard for the property of others; State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987); and the potential for defendant’s rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983), State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir. 1987).
When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993). A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Strother, 606 So.2d 891 (La.App. 2d Cir. 1992), writ denied, 612 So.2d 55 |1R(La.l993); State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989).
We find adequate La.C.Cr.P. art. 894.1 compliance by the trial court. The trial court considered a presentence investigation report which contained all relevant factors such as Gay’s personal history (age, marital status, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. Prior to imposing sentence, the court noted that Gay had a prior conviction for theft and had a significant juvenile record. The trial judge considered that Gay was single, had no children and was of the Baptist faith. Gay’s history included involvement in the 59 Bloods gang in Cullen, Louisiana. The court noted that Gay had numerous short-term jobs and had pending against him a charge of escape which occurred after his conviction on the present charges. The court specifically articulated the factors set forth in La.C.Cr.P. art. 894.1, additionally noting that Gay had shown no remorse for the present offense. The court also considered as important the age of the victim, the fact that Gay violated the sanctity of her home, shot the victim, and then attempted to shoot her a second time.
Nor can we find the imposed maximum sentences to be excessive. The egregious nature of the offenses is adequate to qualify Gay as the worst type of offender who committed the most serious violation of both offenses. His intrusion into the home of an elderly female with a loaded gun is alone an unconscionable act. That not being enough, however, Gay chose to threaten the elderly victim’s life, demand money of her and shoot her, leaving her for dead as he sought to steal her car. Gay showed no remorse 11fland denied culpability. The harm caused to the victim, both physical and mental, was devastating. In short, the record illustrates that Gay has no respect for life and the property of others.
The record also supports the trial court’s imposition of consecutive sentences. Concurrent sentences arising out of a single course of conduct are not mandatory. State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 94-0348 (La.05/20/94), 637 So.2d 476; State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985). Nor are consecutive sentences under those circumstances necessarily excessive. Orte-go, supra; State v. Williams, 445 So.2d 1171 (La.1984); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.), writ denied, 508 So.2d 65 (La.1987). In imposing the chosen sentence, the trial court noted the victim’s age, Gay’s lack of remorse and the victim’s impact statement which indicated that the victim is required to take medication since this incident and that for quite some time was afraid to leave her home. Additionally, the court was obviously impressed by the nature and viciousness of the attack and Gay’s disregard for the life and property of others. We find these factors more than adequate to justify the imposition of consecutive sentences in this *368 case and amply reflect the court’s reasons for the consecutive terms.
We, therefore, find no merit to this assignment of error.
Conclusion
For the foregoing reasons, we affirm Gay’s convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.

. The record shows that the state originally filed a bill of information on February 14, 2000, charging Gay with attempted first degree murder while engaged in the crime of aggravated burglary. On May 5, 2000, a grand jury indictment charged Gay similarly, but a written alteration changed the underlying felony to armed robbery. At trial, the state also orally amended the indictment to reflect that charge.

. Undoubtedly, had Gay been convicted as charged by the state, his argument would have had merit. The law is clear that when proof of the commission of a felony (armed robbery in this instance) is an essential element of attempted first degree murder, double jeopardy bars the punishment of a defendant for both the attempted first murder and the underlying felony. Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); State v. Sandifer, 95-2226 (La.09/05/96), 679 So.2d 1324; State v. Marshall, 94-0461 (La.09/05/95), 660 So.2d 819; State v. Powell, 598 So.2d 454 (La.App. 2d Cir. 1992), writ denied, 605 So.2d 1089 (La. 1992); State v. Lee, 554 So.2d 180 (La.App. 2d Cir. 1989); State v. Johnson, 97-867 (La. App. 5th Cir.04/15/98), 711 So.2d 848, writ denied, 98-1293 (La. 10/09/98), 726 So.2d 20; State v. Pittman, 95-382 (La.App. 5th Cir. 10/01/96), 683 So.2d 748; See discussion in State v. Lowery, 33,905 (La.App.2d Cir.02/28/01), 781 So.2d 713, writ denied, 2001-1041 (La.02/22/02), 809 So.2d 978. In this type of case, the underlying felony is considered a lesser-included offense of felony-murder and thus the same offense for double jeopardy purposes. Sekou v. Blackburn, 796 F.2d 108 (5th Cir. 1986).